IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Crim. No. 1:24-cr-180-PTG-1 |
| | ) | |
| RAYMOND RAHBAR, | ) | |
| Defendant. | ) | |

## DEFENDANT RAHBAR'S MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR A BILL OF PARTICULARS

**COMES NOW** the Defendant, Raymond Rahbar, through counsel, and submits this Memorandum of Law in Support of his Motion for a Bill of Particulars filed concurrently.

## TABLE OF CONTENTS

Introduction .................................................................................................................................. 1

Legal Standard ........................................................................................................................... 2

Argument .................................................................................................................................... 3

    A.    A Bill of Particulars is Necessary to Cure Certain Deficiencies in the Superseding Indictment. ............................................................................................................................ 4

        1.    The Falsity Alleged in the First Draw PPP Loan Scheme .............................. 4

        2.    The Documents Containing the Alleged False Statements .............................. 5

        3.    The Role the BYNDfit Entities' Ownership Played in the Alleged Fraud Scheme ....... 6

        4.    The "Material Misrepresentations" Made in Securing the Second Draw PPP Loans .... 7

        5.    The Allegations Regarding Unauthorized PPP Loan Expenditures ............................... 7

    B.    The Discovery Provided Does Not Cure the Issues Identified in the Superseding Indictment. ............................................................................................................................ 8

Conclusion ................................................................................................................................. 9

# TABLE OF AUTHORITIES

## Cases

*Russell v. United States*,
    369 U.S. 749 (1962) ................................................................................................................2

*United States v. Anderson*,
    481 F.2d 685 (4th Cir. 1973) ...................................................................................................2

*United States v. Bortnovsky*,
    820 F.2d 572 (2d Cir. 1987) ....................................................................................................2

*United States v. Brandon*,
    298 F.3d 307 (4th Cir. 2002) ...................................................................................................2

*United States v. Daniels*,
    973 F.2d 272 (4th Cir. 1992) ...........................................................................................2, 6, 7

*United States v. Fletcher*,
    74 F.3d 49 (4th Cir. 1996) .......................................................................................................2

*United States v. Kumara*,
    No. 1:17cr82 (JCC), 2017 U.S. Dist. LEXIS 82592 (E.D. Va. May 30, 2017) ........................2

*United States v. Livingston*,
    2016 WL 743399 (E.D. Va. Feb. 23, 2016) ..........................................................................3, 9

*United States v. Mahaffy*,
    446 F. Supp. 2d 115,120 (E.D.N.Y. 2006) ..............................................................................3

*United States v. Perry*,
    30 F. Supp 3d 514 (E.D. Va. 2014) .........................................................................................9

*United States v. Sampson*,
    448 F. Supp. 2d 692 (E.D. Va. 2006) ..........................................................................2, 5, 6, 7

*United States v. Schembari*,
    484 F.2d 931 (4th Cir. 1973) ...................................................................................................3

*United States v. Society of Independent Gasoline Marketers of America*,
    624 F.2d 461 (4th Cir. 1980) ...................................................................................................3

## Statutes

15 U.S.C. § 636(a)(36)(F)(i) ...........................................................................................................8

## Rules

Fed. R. Crim. P. 7(c)(1) ............................................................................................................2, 7

Fed. R. Crim. P. 7(f) .......................................................................................................................2

*Introduction*

On August 15, 2024, a grand jury in the Eastern District of Virginia returned an eleven-count indictment against Mr. Rahbar and his co-defendant, Ryan Macaulay ("Defendants"), charging Conspiracy to Commit Bank Fraud, three counts of Bank Fraud, Conspiracy to Commit Money Laundering, three counts of Money Laundering, two counts of Aggravated Identity Theft, and Perjury. *See* Dkt. 1. On November 14, the grand jury returned a superseding indictment, which added two additional counts of Bank Fraud and one additional count of Money Laundering.[1] *See* Dkt. 38. The superseding indictment charges that Mr. Rahbar and Mr. Macaulay conspired to (Count 1) and committed (Counts 2–6) bank fraud by submitting PPP loan applications with material misrepresentations. *Id.* at ¶¶ 23–62. The superseding indictment further alleges that the Defendants conspired to (Count 7) and committed (Counts 8–11) money laundering by writing four checks that contained the proceeds of the fraudulent PPP loan applications. *Id.* at ¶¶ 63–71. In addition, it alleges that Mr. Rahbar committed aggravated identity theft by using individuals means of identification in the PPP loan applications without lawful authority (Counts 12–13) and that Mr. Rahbar perjured himself by misrepresenting the average quarterly payroll in a civil case (Count 14). Although the Government has drafted a speaking indictment, it has failed to allege with sufficient particularity aspects of the fraud scheme alleged in Counts 1 through 11 to allow Mr. Rahbar to adequately prepare a defense for trial.

---

[1] On November 14, 2024, Mr. Rahbar, through undersigned counsel, filed a Motion to Extend Pretrial Motions Filing Deadline in light of the superseding indictment. *See* Dkt. 36. Out of an abundance of caution, Mr. Rahbar files this motion to comply with the original filing deadline for pretrial motions set forth under the original indictment. Mr. Rahbar reserves the right to identify additional deficiencies, given the timing of the superseding indictment and inability to review key discovery from the Government in this case.

*Legal Standard*

Because an indictment implicates a defendant's constitutional due process rights and protections against double jeopardy, it "must contain the elements of the offense charged, fairly inform a defendant of the charge, and enable the defendant to plead double jeopardy as a defense in a future prosecution for the same offense." *United States v. Daniels*, 973 F.2d 272, 274 (4th Cir. 1992) (citing *Russell v. United States*, 369 U.S. 749, 763–64 (1962)). An indictment that contains generic charges of an offense is insufficient unless it contains "a statement of the *essential* facts constituting the offense charged." *United States v. Brandon*, 298 F.3d 307, 310 (4th Cir. 2002) (quoting Fed. R. Crim. P. 7(c)(1)) (emphasis in original). These facts must be provided with specificity to ensure a defendant knows "what he must be prepared to meet" at trial. *Russell*, 369 U.S. at 765. In cases involving fraud or perjury, "it is critical that the government identify in the indictment the dates of the fraudulent conduct, the specific fraudulent documents, and the fraudulent statements within the documents." *United States v. Sampson*, 448 F. Supp. 2d 692, 696 (E.D. Va. 2006); *see also United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987).

When an indictment lacks the requisite specificity, Federal Rule of Criminal Procedure 7(f) provides that "[t]he court may direct the government to file a bill of particulars." *See also United States v. Kumara*, No. 1:17cr82 (JCC), 2017 U.S. Dist. LEXIS 82592, at *3 (E.D. Va. May 30, 2017) (noting a bill of particulars can be used to "supply any essential detail which may have been omitted from the indictment") (quoting *United States v. Anderson*, 481 F.2d 685, 691 (4th Cir. 1973))). A bill of particulars "identifies for the defendant the area within which the government's chief evidence will fall." *United States v. Fletcher*, 74 F.3d 49, 53 (4th Cir. 1996). It allows a defendant to "obtain sufficient information on the nature of the charge against [the defendant] so that he may prepare for trial, minimize the danger of surprise at trial, and enable him to plead his

acquittal or conviction in bar of another prosecution for the same offense." *United States v. Schembari*, 484 F.2d 931, 934-35 (4th Cir. 1973).

A court considering whether to grant a defendant's request for a bill of particulars can consider both the formal allegations set forth in the indictment and the information provided during discovery. *United States v. Society of Independent Gasoline Marketers of America*, 624 F.2d 461, 466 (4th Cir. 1980). The production, organization, and amount of discovery can be persuasive, and voluminous discovery that obfuscates the alleged conduct is "reason to grant a bill of particulars." *See, e.g.*, *United States v. Livingston*, 2016 WL 743399 at *2 (E.D. Va. Feb. 23, 2016) (citing *United States v. Mahaffy*, 446 F. Supp. 2d 115,120 (E.D.N.Y. 2006)).

## *Argument*

The allegations set forth in Count 1—and incorporated by reference in Counts 2 through 11—of the superseding indictment fail to provide the requisite specificity necessary to allow Mr. Rahbar to prepare and present a defense at trial.

Count 1 includes five nearly identical sub-sections describing the charges related to two groups of entities: (1) the "BYNDfit entities," which include BF Chinatown, BF Georgetown, and BF Management, and (2) two of the three "Construction entities" described in the superseding indictment, AMC Building and American Majestic. *See* Dkt. 38 at ¶¶ 31–36 (BF Chinatown), 37–42 (BF Georgetown), 43–48 (BF Management), 49–54 (AMC Building), and 55–60 (American Majestic). For each of the five entities, Count 1 of the superseding indictment states that either Mr. Rahbar or Mr. Macaulay "submitted a fraudulent loan application" with false representations about the number of employees and monthly payroll. *Id.* at ¶¶ 31–32, 37–38, 43–44, 49–50, and 55–56. For the three BYNDfit entities in particular, the superseding indictment alleges that the applications also contained false representations about the majority ownership of the applying

entity. *Id.* at ¶¶ 32, 38, and 44. The superseding indictment further charges that for all five entities' applications, either Mr. Rahbar or Mr. Macaulay fabricated "documents" that showed "hundreds of thousands of dollars in payroll expenses" and that the "false statements in those documents were material." *Id.* at ¶¶ 33, 39, 45, 51, and 57. The superseding indictment states these PPP loan applications included certifications that the "proceeds would only be used for authorized purposes," but that "much of the money was not used for payroll but instead transferred to" the defendants or "entities they controlled." *Id.* at ¶¶ 35, 41, 47, 53, and 59. The sub-sections dedicated to these five entities in Count 1 each conclude with a catch-all charge that Defendants "repeated this process and applied for a second draw PPP loan" with applications that "contained similar material misrepresentations." *Id.* at ¶¶ 36, 42, 48, 54, and 60. Counts 2 through 11 incorporate these allegations by reference and rely on the alleged unlawful activity described in Count 1.

## A. A Bill of Particulars is Necessary to Cure Certain Deficiencies in the Superseding Indictment.

A Bill of Particulars is necessary to properly defend against Count 1 (and, by extension, Counts 2 through 11) because the Government has provided insufficient detail as to the allegedly fabricated documents, falsity of the information provided, and unauthorized purposes for which the money was used. Specifically, a Bill of Particulars is warranted to clarify the following:

### 1. *The Falsity Alleged in the First Draw PPP Loan Scheme*

Count 1 of the superseding indictment alleges that the first draw PPP loan applications "inflated the number of employees who worked at the BYNDfit entities to increase their payroll costs and, as a result, obtain more money from the PPP lenders." *Id.* at ¶ 28. Beyond this general detail, the superseding indictment does not identify the approximate number of employees by which the applications are inflated or, by extension, the amount of money obtained from PPP lenders that is allegedly part of the scheme. Each application referenced in Count 1 provides an

employee count and payroll amount (*see id.* at ¶¶ 32, 38, 44, 50, and 56), but the superseding indictment is silent as to the degree to which the applications were false. In discovery, the government provided the loan applications themselves, along with approximately 194,000 other documents. The government helpfully identified a list of employees supporting each PPP loan application, but the government has not identified which of the listed individuals and associated payroll amounts were legitimate and which were not. The superseding indictment suggests that at least some individuals were genuinely employed and that portions of the payroll expenses claimed were legitimate. For example, the superseding indictment states that each application "*inflated* the number of employees" who worked at these entities (*id.* at ¶ 28) (emphasis added), and the allegations in Count 14 specifically state that Mr. Rahbar paid "less than $4,000 in payroll during the first quarter of 2020" to BF Management employees, as opposed to stating that he paid no payroll during this time (*id.* at ¶ 75). However, the Government has not provided information identifying these individuals, how it calculated the amount of payroll, or how it distinguished legitimate and illegitimate employees. Mr. Rahbar cannot properly prepare his defense without knowing which of the employees named in the PPP loan application materials the Government intends to claim were fabricated and the corresponding amount of payroll Mr. Rahbar will be required to defend at trial. *See Sampson*, 448 F. Supp 2d 692 at 696 (ordering a bill of particulars where "indictment fail[ed] to state . . . what was allegedly fraudulent about the documents at issue").

### 2. The Documents Containing the Alleged False Statements

For each entity described in Count 1, the superseding indictment claims that Defendants "submitted documents that purported to show hundreds of thousands of dollars in payroll expenses." *Id.* at ¶¶ 33, 39, 45, 51, and 57 (all referring to multiple "documents" containing "false statements"). The superseding indictment does not specify the "documents" beyond the

applications themselves. The Government has identified some documents related to the BYNDfit entities in discovery that, it alleges, support the scheme, and it represented that in addition to the PPP loan applications, it believes the tax Form 940s and Form 941s associated with these entities are also false. However, given the volume of discovery materials in this case[2], a Bill of Particulars is necessary to identify the specific documents containing the allegedly false representations that are referenced in the indictment. And, to the extent those documents differ for the newly added Construction entities, the Government should be required to identify the documents that support the new charges related to those entities' loan applications. Mr. Rahbar cannot properly prepare for trial without knowing the "documents" containing "false statements" that the Government has referenced in the superseding indictment. *See Sampson*, 448 F. Supp 2d 692 at 696. Failure to provide this clarity impedes Mr. Rahbar's ability to plead double jeopardy as a defense in any future case involving these entities and the PPP loan applications. *See Daniels*, 973 F.2d at 274.

    3.    ***The Role the BYNDfit Entities' Ownership Played in the Alleged Fraud Scheme***

The superseding indictment alleges the Defendants sought to "disguise" their ownership of the BNYDfit entities (Dkt. 38 at ¶ 28), but it fails to provide detail explaining how they disguised their ownership or how the alleged false statements about ownership in the applications were material to the scheme charged. *Id.* at ¶¶ 32, 38, and 44 (stating that the employee count and payroll were material "[b]ecause the size of the loan depended on the number of employees," without addressing the materiality of the entities' ownership). Not only does the superseding indictment fail to clarify what Mr. Rahbar did to disguise his role in the entities, it fails to explain how that advanced the fraud scheme or ran afoul of PPP loan requirements. A Bill of Particulars is necessary to clarify the Government's allegations regarding how the Defendants' statements about entity

---

[2] As discussed in Section B, to date, the Government has produced over 194,000 documents of discovery in this case.

ownership are false, material, and related to the fraud scheme alleged within Count 1 (and incorporated by reference for the remaining Counts).

    *4.*    ***The "Material Misrepresentations" Made in Securing the Second Draw PPP Loans***

The superseding indictment provides no details regarding the second draw PPP loan applications submitted on behalf of all five entities named in Count 1. The sole paragraph at the end of each entity's narrative in Count 1 summarily states that each of the second draw applications contained "similar material misrepresentations" with no specificity as to what those representations were, the documents containing those representations, or the materiality thereof. Dkt. 38 at ¶¶ 36, 42, 48, 54, and 60; *see also Sampson* 448 F. Supp 2d 692 at 696 ("Defendant must also be put on notice as to the specific dates of the allegations, the documents, and what the false statements were within the documents."). It contains none of the detail provided for the first draw loan applications and attempts to satisfy the standard for a sufficient indictment by pointing to the misrepresentations made in the first draw applications and generically claiming that five applications submitted *one year later* were "similar." This is insufficient to "fairly inform [the] defendant of the charge, and enable the defendant to plead double jeopardy as a defense in a future prosecution" as the Constitution requires (*Daniels*, 973 F.2d at 274), and provides Mr. Rahbar with no facts as to what he will meet at trial, let alone those that are "essential" (Fed. R. Crim. P. 7(c)(1)).

    *5.*    ***The Allegations Regarding Unauthorized PPP Loan Expenditures***

Counts 1 through 7 repeatedly reference that the PPP loan proceeds were used for "unauthorized purposes." In discovery, the Government provided voluminous bank records, as well as a summary forensic accounting report by an FBI analyst. These discovery materials do not cure the defective superseding indictment by identifying the transactions that were allegedly

improper and by which the government intends to prove the charges.

Count 1 provides that on five separate occasions Mr. Rahbar or Mr. Macaulay "certified that all loan proceeds would only be used for authorized purposes" but ultimately used "much of the money" for non-payroll purposes. *Id.* at ¶¶ 35, 41, 47, 53, and 59. In Count 7, the Government provides more detail, which still falls short, stating that Mr. Rahbar deposited select checks "to purchase personal items, to invest in the stock market, and to support his other business ventures." Dkt. 38 at ¶ 68. Pursuant to PPP loan guidance, borrowers were permitted to use loan proceeds to cover any of the categories of expenses enumerated in the CARES Act, including (1) employee benefits, (2) salaries and compensations, (3) mortgage payments, (4) rent, (5) utilities, (6) interest on certain debt obligations, (7) enumerated expenditures, (8) property damage costs, (9) supplier costs, and (10) worker protection expenditures. 15 U.S.C. § 636(a)(36)(F)(i)(I–XI); *see also* Dkt. 38 at ¶ 21 (listing examples of allowable uses of loans under the PPP). The lack of detail clarifying what the unauthorized purposes are to which Mr. Rahbar allegedly directed funds, or conversely, which funds were used for authorized purposes, leaves Mr. Rahbar in the untenable position of guessing as to the scope of the charges and how to prepare for trial.

**B.     The Discovery Provided Does Not Cure the Issues Identified in the Superseding Indictment.**

The Government's disclosure of voluminous discovery does not cure the aforementioned deficiencies. Indeed, the volume of—and problems with—the discovery provided dramatically increase Mr. Rahbar's risk of surprise at trial. *See, e.g.*, *United States v. Perry*, 30 F. Supp 3d 514, 524 (E.D. Va. 2014) (granting a Bill of Particulars where government open-file discovery resulted in productions of "tens of thousands of documents"); *Livingston*, 2016 WL 743399 at \*2 (acknowledging voluminous discovery that "obfuscates the allegedly unlawful conduct and unfairly inhibits the defendant's preparation for trial" is reason to grant a Bill of Particulars)

(quotations omitted). To date, the Government has made three productions containing over 194,000 documents spanning well beyond the time frame and entities identified in the superseding indictment. The Government has identified what it considers to be the "hot" documents in this case for Mr. Rahbar's counsel, but a cursory review of the discovery provided shows numerous versions of these documents sprinkled throughout the Government's files, in addition to hundreds of bank records and checks associated with various entities named (and not named) in the superseding indictment. On information and belief, Mr. Rahbar understands the Government's first production to contain what it believes to be the core set of materials. But this production alone contains nearly 7,000 documents, several hundreds of which were originally corrupted or lacked metadata. The corrupted files have caused numerous issues, such as jumbled text, blackouts, or an inability to open the files. Undersigned counsel and the Government have discussed these issues, and the Government has agreed to reproduce discovery materials in a more readily searchable format. While the to-be-updated discovery set will presumably permit the defense to more effectively review the voluminous discovery in the case, both the lack of meaningful ability to review the discovery to date and the volume of documents provided undercut any argument that discovery cures the insufficient detail in the superseding indictment. Moreover, any discovery reviewed to date was considered within the scope of the original indictment. The recent addition of the Construction entities and associated Counts to the superseding indictment underscore the need for clarity. Given the volume of and issues with discovery in this case, a Bill of Particulars is warranted so that Mr. Rahbar can prepare his defense in short order.

### *Conclusion*

For the reasons stated herein, Mr. Rahbar, by counsel, respectfully requests that this Court grant this Motion and direct the Government to state the following in a Bill of Particulars:

Issue 1: The Falsity Alleged in the First Draw PPP Loan Scheme

- In Paragraphs 28, 32, 38, 44, 50, and 56, the number and identities of "bogus employee[s]" claimed in the PPP loan applications and the amount of payroll submitted by Defendants that were allegedly fabricated;

Issue 2: The Complete Universe of Documents Containing the False Statements Alleged

- In Paragraphs 33, 39, 45, 51, and 57, the "documents that purported to show hundreds of thousands of dollars in payroll expenses";

Issue 3: The Role the BYNDfit Entities' Ownership Played in the Alleged Fraud Scheme

- In Paragraph 32, whether and how the identification of "the majority owner of BF Chinatown" and the representation that "none of BF Chinatown's owners owned or had common management with other businesses" are false and material;

- In Paragraphs 38 and 44, whether and how the identification of "the majority owner" of each entity is false and material;

Issue 4: The "Material Misrepresentations" Made in Securing the Second Draw PPP Loans

- In Paragraphs 36, 42, 48, 54, and 60, the "similar material misrepresentations" Mr. Rahbar and Mr. Macaulay allegedly made for purposes of obtaining second draw PPP loans for BF Chinatown, BF Georgetown, BF Management, AMC Building, and American Majestic, and the documents reflecting those misrepresentations; and

Issue 5: The Allegations Regarding Unauthorized PPP Loan Expenditures

- In Paragraphs 35, 41, 47, 53, and 59, the purposes for which the PPP loan proceeds were used and the allegedly "unauthorized" nature of those purposes.

Dated: November 18, 2024                            Respectfully submitted,

*/s/* _____                        */s/* _____
Joseph Flood                                        Patrick F. Stokes *(applied pro hac vice)*
SHELDON & FLOOD, PLC                                Alyse Ullery *(applied pro hac vice)*
10621 Jones Street, Suite 301-A                     GIBSON, DUNN & CRUTCHER LLP
Fairfax, V.A. 22030                                 1700 M Street, N.W.
Telephone: 703.691.8410                             Washington, D.C. 20036
Email: jflood@sfhdefense.com                        Telephone: 202.955.8500
                                                    Email: pstokes@gibsondunn.com
                                                    Email: aullery-glod@gibsondunn.com

*Attorneys for Defendant Raymond Rahbar*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing was filed by CM/ECF on this the 19th day of November, 2024, which will then send a notification to all counsel of record.

/s/
Joseph Flood
SHELDON & FLOOD, PLC
10621 Jones Street, Suite 301-A
Fairfax, V.A. 22030
Telephone:  703.691.8410
Email:  jflood@sfhdefense.com

*Attorney for Defendant Raymond Rahbar*