IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Crim. No. 1:24-cr-180-PTG-1 |
| | ) | |
| RAYMOND RAHBAR, | ) | |
| Defendant. | ) | |

**DEFENDANT RAHBAR'S MOTION**
**FOR SPECIFICATION OF 802(d)(2) STATEMENTS**

Defendant, Raymond Rahbar, through counsel, respectfully moves the Court to compel the government to identify the specific statements, recordings, and messages that it intends to introduce at trial under Rule 802(d)(2) of the Federal Rules of Evidence. In support of his motion, Mr. Rahbar states as follows:

*Background*

Mr. Rahbar was originally indicted in an eleven count indictment for Conspiracy to Commit Bank Fraud, in violation of 18 U.S. § 1349 (Count 1), Bank Fraud, in violation of 18 U.S.C. § 1344 (Counts 2-4), Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. §1956(h) (Count 5), Money Laundering – Unlawful Monetary Transactions, in violation of 18 U.S.C. § 1957 (Counts 6-8), Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A (Counts 9-10), and Bankruptcy Fraud – Perjury, in violation of 18 U.S.C. §152(2) (Count 11). (Dkt. 1) The investigation into Mr. Rahbar's allegedly criminal conduct has been ongoing since at least October 21, 2022.[1]

On November 14, 2024, the United States obtained a fourteen-count superseding indictment from the Grand Jury which added two additional counts of Bank Fraud and one

---
[1] US-00038146

additional count of Money Laundering, substantively broadened the Conspiracy to Commit Bank Fraud count, and made numerous new material assertions of fact. (Dkt. 38)

Mr. Rahbar is alleged to have conspired with Ryan Macauley, who is charged as his codefendant, and Carl Pierre, who has pleaded guilty to Conspiracy to Commit Bank Fraud, in violation of 18 U.S.C. §§ 1344 and 1349. Macauley and Pierre are Mr. Rahbar's alleged coconspirators and, on information and belief, the government will seek to introduce some or all of their statements a trial pursuant to Rule 802(d)(2)(E) of the Federal Rules of Evidence. Mr. Pierre is a cooperating witness for the Government.

Undersigned counsel was appointed on September 17, 2024, and is the fifth attorney to enter an appearance in this matter on behalf of Mr. Rahbar. None of Mr. Rahbar's prior attorneys reviewed discovery or provided undersigned counsel with any meaningful work product.

Since appointment, undersigned counsel has been diligent in his efforts to obtain and review discovery, investigate the allegations, and prepare for trial. Due to technical problems in the transmission of discovery materials, and through no fault of his own, counsel was not able to access the discovery in this matter – totaling approximately 194,000 documents – until October 15, 2024. Upon receiving discovery, undersigned counsel began an immediate review of the disclosed material and so far has been able to review about 22,000 pages of the materials.

Significant portions of the first 50,000 pages (Production 1) of discovery were received in a corrupted or otherwise inaccessible format and this was communicated to the Government on multiple occasions - verbally and in writing - including on September 27, 2024, October 9, 2024, and October 25, 2024. The Government has worked cooperatively to ameliorate these issues.

Included in the discovery that counsel has been able to review are thousands (if not tens of thousands) of pages of records – including sworn statements, testimony, affidavits, pleadings, etc. – containing countless prior statements attributed to Mr. Rahbar, Macauley, and or Pierre, their

agents, their representatives, or to other individuals the Government may contend were authorized to make statements on their behalf individually or as a collective.[2] On information and belief, the government will seek to introduce many of these statements at trial pursuant to Rule 802(d)(2) of the Federal Rules of Evidence.[3]

Given the volume of discovery material provided, and the complex nature of this case, defense counsel has enlisted the assistance of outside, pro bono counsel, which has volunteered to upload the discovery material into a searchable data base in order to make it more accessible. That process cannot begin until the Defense receives load ready files referred to herein. Even so, given amount of potentially admissible statements appearing in the first 22,000 pages of discovery, it seems highly likely that countless additional Rule 802(d)(2) statements will be included in the remaining voluminous discovery documents counsel has yet to review.

Because the Government has produced an enormous volume of recorded statements attributable to the defendants and coconspirators – a significant number of which were received in corrupted format - it is simply impossible for the defense to review all these communications in time for trial. Therefore, the Court should require the Government to identify the statements it intends to rely upon at trial.

---

[2] Mr. Rahbar and his alleged coconspirators have been involved in more than a dozen civil suits following the dissolution of the businesses which gave rise to the alleged fraud in this case. In addition, Mr. Rahbar has been involved in numerous other lawsuits prior to his alleged involvement in this case. During the course of those proceedings Mr. Rahbar and his alleged coconspirators have made tens of thousands of statements that the Government may contend are admissible pursuant to Rule 802(d)(2) of the Federal Rules of Evidence.

[3] The Government has already relied upon Rule 802 statements to advance its prosecution of this matter. For example, in seeking a search warrant in this matter, FBI Special Agent Bridgit DePietto specifically relied upon Mr. Rahbar's deposition testimony from May 14 & 21, 2021, in support of her assertion of probable cause. *See In the matter of the Search Warrant of Information that is Stored at Premises Controlled by Google LLC*, 1:24-SW-438, Under Seal, at 21-22 (June 18, 2024) (first provided to the Defense on November 11, 2024)

*Argument*

It is widely recognized that discovery of sufficient volume "impedes rather than assists the defense in its understanding of the government's case." *United States v. Magalnik*, 160 F. Supp. 3d 909, 917 (W.D. Va. 2015) (quoting *United States v. Modi*, 197 F. Supp. 2d 525, 530 (W.D. Va. 2002) (alterations omitted). Therefore, when the government provides overwhelming discovery, courts frequently order the government to provide more particular information to the defense. *See id.* at 918 (requiring the government to identify which of thousands of files it intended to present at trial and which of hundreds of individuals it intended to rely on at trial); *United States v. Perry*, 30 F. Supp. 3d 514, 523 (E.D. Va. 2014) ("A defendant is not fairly apprised of the necessary information merely because the government provided 'mountains of documents to defense counsel who were left unguided as to which documents would be proven falsified' at trial." (quoting *United States v. Bortnovsky*, 820 F.2d 572, 575 (2d Cir. 1987))); *United States v. Trie*, 21 F. Supp. 2d 7,21 n.12 (D.D.C. 1998) (citing *Bortnovsky*, 820 F.2d at 575; *United States v. Upton*, 856 F. Supp. 727, 753 (E.D.N.Y. 1994)) ("The open file discovery, amounting to making available for inspection . . . approximately 1.9 million documents, is no substitute for adequate specification of the crimes with which he is charged."); *see also United States v. Vasquez-Ruiz*, 136 F. Supp. 2d 941, 943 (N.D. Ill. 2001) ("The defense should not be left to its own devices and a sifting of the voluminous materials that have been provided in order to divine the particulars of these critical allegations, which have not yet been disclosed." (citing *United States v. Davidoff*, 845 F.2d 1151, 1155 (2d Cir. 1988)). Indeed, "[p]erhaps the most frequent case in which particulars are warranted is where discovery is overwhelmingly extensive and the government fails to designate which documents it intends to introduce and which documents are merely relevant to the defense." *United States v. Mahaffy*, 446 F. Supp. 2d 115, 119 (E.D.N.Y. 2006) (emphasis omitted).

As these cases illustrate, Mr. Rahbar needs to do more than simply *understand* the case against him. Even if the defense were able to locate the statements on which the government intends to rely, and even if it were somehow able to distinguish them from other statements that are potentially inculpatory, he must then be prepared to litigate their admissibility and/or potentially rebut or explain each of those statements. This is will be an extremely very lengthy process, involving extensive factual investigation, which must begin well in advance of trial. *See Sneed v. Smith*, 670 F.2d 1348, 1353 (4th Cir. 1982) ("[A]n attorney must, at a minimum . . . 'allow himself enough time for reflection and preparation for trial.'" (quoting *Coles v. Peyton*, 389 F.2d 224, 226 (4th Cir. 1968)). Even assuming that counsel can identify the tens of thousands of Rule 802 statements prior to trial, we must then discuss each of them with our client, research their admissibility, and potentially investigate and prepare a defense to each statement.

To permit the government to introduce statements of its choice, without any guidance to Mr. Rahbar as to the identity of those statements, would effectively deprive Mr. Rahbar of any opportunity to prepare for trial. *See Perry*, 30 F. Supp. 3d at 524-25 (requiring the government to identify which of the thousands of documents it would, or may, rely on at trial); *Trie*, 21 F. Supp. 2d at 21 ("A defendant . . . should not have to waste precious pre-trial preparation time guessing which statements he has to defend against or which contributors may be witnesses against him at trial when the government knows precisely the statements on which it intends to rely and can easily provide the information."); *Upton*, 856 F. Supp. at 753 ("[I]t would be unfair under the circumstances of this case to allow the government to introduce allegedly falsified maintenance records buried in thousands of documents already produced without prior notice to defendants of those documents upon which the government intends to rely.").

Unlike many motions for disclosures of coconspirator statements, Mr. Rahbar is not asking for production of anything to which he is not entitled. Neither is he asking (in this motion) for the government to identify any witnesses, informants, or coconspirators. The government has already turned over the documents in question. Mr. Rahbar is simply requesting that the Government be required to narrow down the documents to a range that enables him to prepare for trial.

## *Conclusion*

For all these reasons, Mr. Rahbar respectfully requests the Court to order the government to identify, no later than December 6, 2024, which statements it intends to seek to introduce pursuant to Rule 801(d)(2) of the Federal Rules of Evidence.

Dated: November 19, 2024

Respectfully submitted,

*/s/*
Joseph Flood, VSB #71716
SHELDON & FLOOD, PLC
10621 Jones Street, Suite 301-A
Fairfax, V.A. 22030
Telephone: 703.691.8410
Email: jflood@sfhdefense.com

*/s/*
Patrick F. Stokes *(applied pro hac vice)*
Alyse Ullery *(applied pro hac vice)*
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036
Telephone: 202.955.8500
Email: pstokes@gibsondunn.com
Email: aullery-glod@gibsondunn.com

*Attorneys for Defendant Raymond Rahbar*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of November, 2024, I filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will generate a Notice of Electronic Filing to all parties of record.

/s/
_____
Joseph T. Flood
SHELDON & FLOOD, PLC
10621 Jones Street, Suite 301-A
Fairfax, V.A. 22030
Telephone: 703.691.8410
Email: jflood@sfhdefense.com

*Attorney for Defendant Raymond Rahbar*