1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

UNITED STATES OF AMERICA,          :     Criminal Case
                                   :     No. 1:24-cr-00180
               Plaintiff           :
                                   :
          v.                       :
                                   :
                                   :
RYAN MACAULAY,                     :     April 15, 2025
                                   :     10:35 a.m.
               Defendant           :
............................    :     ........................

TRANSCRIPT OF PLEA HEARING
BEFORE THE HONORABLE LEONIE M. BRINKEMA
UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFF:          CHRISTOPHER J. HOOD
                            KRISTIN S. STARR
                            AVISHEK PANTH
                            UNITED STATES ATTORNEY'S OFFICE
                            EASTERN DISTRICT OF VIRGINIA
                            2100 Jamieson Avenue
                            Alexandria, VA  22314
                            703-299-3700

FOR THE DEFENDANT:          DAVID BARRY BENOWITZ
                            RAMMY GEORGE BARBARI
                            PRICE BENOWITZ LLP
                            409 7th Street, NW
                            Suite 200
                            Washington, DC  20004
                            202-417-6000


OFFICIAL COURT REPORTER:    REBECCA STONESTREET, RPR, CRR
                            U.S. District Court, 9th Floor
                            401 Courthouse Square
                            Alexandria, Virginia  22314
                            (240) 426-7767

(Pages 1 - 24)
COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES

**P R O C E E D I N G S**

COURTROOM CLERK:  Criminal number 1:24-CR-180, United States of America versus Ryan Macaulay.  Will counsel please note their appearances for the record, first for the government.

MR. HOOD:  Good morning, Your Honor.  Chris Hood, Kristin Starr, and Avi Panth on behalf of the United States.

THE COURT:  Good morning.

MR. BENOWITZ:  Good morning, Your Honor. David Benowitz and Rammy Barbari on behalf of Mr. Macaulay, who is present.

THE COURT:  All right.  Now, I am standing in for Judge Giles.  Is there any objection to this court handling the plea?

MR. HOOD:  No, Your Honor.

MR. BENOWITZ:  No, Your Honor.

THE COURT:  All right.  And then Judge Giles will actually handle the sentencing.  I'm simply going to take the defendant's plea.  Is there any objection to proceeding that way?

MR. HOOD:  No, Your Honor.

MR. BENOWITZ:  No, Your Honor.

THE COURT:  And I just want to make sure.  My understanding is there is no plea agreement, there's simply an agreed statement of facts.  Is that correct?

MR. HOOD:  That is correct, Your Honor.

MR. BENOWITZ:  That's right.

MR. HOOD:  And we sent you a courtesy copy I believe yesterday.

THE COURT:  Right.

MR. HOOD:  We have another copy that was executed today that does correct one small change.  We'll hand those up whenever you're ready.

THE COURT:  Well, we have to have the original anyway, so why don't you hand that up.

All right.  Mr. Macaulay, come up to the lectern.

COURTROOM CLERK:  Please raise your right hand.

(Oath administered by courtroom deputy clerk.)

THE COURT:  Mr. Macaulay, you have just taken a promise to tell the truth in answering all of the Court's questions. That means that if you should lie in answering any question, the government could prosecute you for a new and separate crime called perjury.  Do you understand that?

THE DEFENDANT:  I do, Your Honor, yes.

THE COURT:  For the record, what is your full name?

THE DEFENDANT:  Ryan Antoine Macaulay.

THE COURT:  How old are you?

THE DEFENDANT:  36 years old.

THE COURT:  How much education have you completed?

THE DEFENDANT:  High school.

THE COURT:  Do you have any problem reading, writing, understanding, or speaking English?

THE DEFENDANT:  No.

THE COURT:  Are you a United States citizen?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Are you presently on probation, parole, or supervised release with any other criminal case?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Are you at this time under the care of a doctor for any physical or mental condition?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Within the last 24 hours, have you taken any kind of medicine, whether by prescription or over the counter, like an aspirin or Advil?

THE DEFENDANT:  Advil, Your Honor.

THE COURT:  So do you have some pain issue?

THE DEFENDANT:  Just a headache, Your Honor.

THE COURT:  You have that right now?

THE DEFENDANT:  I do not, no.

THE COURT:  Are you at this time under the influence of any alcohol or illegal drugs?

THE DEFENDANT:  No, Your Honor.

THE COURT:  All right.  Now, you have been charged in the superseding indictment with four counts, as I understand it. Count 1 alleges a conspiracy to commit bank fraud, in violation

of 18 U.S.C. 1349; Count 5 charges you with bank fraud in violation of 18 U.S.C., Section 1344; Count 7 charges you with being a member of a conspiracy to commit money laundering, in violation of Title 18 of the United States Code, Section 1956, Subsection H; and Count 11 charges you with money laundering involving unlawful monetary transactions, in violation of Title 18 of the United States Code, Section 1957.

Are you pleading to all four of those counts?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  I'm going to recite what I understand are the penalties, unless the government is ready to do that.  Mr. Hood?

MR. HOOD:  We certainly are capable of doing that, Your Honor.

THE COURT:  Let me check it.  Let's see your numbers. All right.  What are the exposures on each of these counts?

MR. HOOD:  Sure.  Count 1 carries a maximum penalty of 30 years of imprisonment, a fine of $1 million or twice the gross gain, supervised release term of 5 years, and a $100 special assessment.

Count 5 carries the same penalties, which is up to 30 years imprisonment, up to 5 years supervised release, a fine of up to $1 million or twice the gross gain, and a supervised release term of 5 years.

Count 7 carries a maximum term of 10 years

imprisonment, up to a $250,000 fine, 3 years supervised release, $100 special assessment.

And Count 11 also carries 10 years imprisonment, 3 years supervised release, $250,000 fine, and a $100 special assessment.

THE COURT:  All right.  Mr. Benowitz, do you agree with those penalty provisions?

MR. BENOWITZ:  Yes.

THE COURT:  So, Mr. Macaulay, do you understand the various penalties you're exposed to with a plea?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  And to each of these counts, how do you want to plead, guilty or not guilty?

THE DEFENDANT:  Guilty, Your Honor.

THE COURT:  Now, before I go over this guilty plea, because I will be asking you a series of questions about your decision to plead guilty as well as the facts of the case, I want to make sure you understand that at any point if you have a question, you can stop and either ask me or ask your counsel. Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  Now, do you understand that in the federal -- I'm first of all not going to accept your guilty pleas until I've finished what we call the plea colloquy with you.  But I want to make sure you understand, first of all, that

in the federal system, parole no longer exists, so any term of imprisonment that's imposed is going to have to be fully served. Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  When the prison portion of the sentence has been completed, then the supervised release portion will go into effect.  When a person is on supervised release, he's under the control of the federal probation officer, and there may be various conditions that have to be followed as well as conditions that you not do certain things.

And you're currently on bond right now.  Is that correct?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  So supervised release is very much like the type of bond control that you're under right now.  The key fact you need to understand is that if you violate any condition of supervised release, you can be brought back to court, and if the violation is established, then you can be sent back to prison. And that could be for as long as the period of supervised release, which in this case could be as much as 5 years.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Now, when it comes time for sentencing, the Court is going to be looking at two sources of law, the federal sentencing guidelines and Section 3553(a) of Title 18 of the

United States Code.  Under the guidelines, the Court has to make two factual decisions before the guidelines can be calculated.

First, we have to determine your criminal history.  Criminal histories are divided into six categories, with each category getting a number.  A Number 1 criminal history goes to someone who has never been in trouble with the law or has a very minor record.  As convictions or probation violations and other issues occur, then the score will go up to Level 6, which is the most serious level.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And then the Court has to look at the offense conduct.  Now, every federal crime has a base number given to it, and then depending on the specific facts of the case, that number can go up or down.  The types of factors that can affect the offense level could include, for example, the total amount of money involved in a fraud case; the more money involved, the higher the offense level is going to be.  The means with which a fraud was committed; if it's a complex fraudulent scheme, there may be an increase there.  If there were particularly vulnerable victims, that can increase the score.

A factor that can decrease the score is full acceptance of responsibility, in which case a person can have two levels reduced.  In many of the plea agreements that we have - you don't have that particular agreement here - the government will

9

actually agree to request a third level reduction for acceptance of responsibility if the offense level is 16 or higher.  That would not -- apparently that would not, at least at this point, apply in your case.

But in any case, at the end of the day, the Court will determine the criminal history number and the offense number, and then those two numbers will be put on a one-page chart called the sentencing guideline table.  Now, that will establish an advisory guideline range which the Court must consider in imposing the sentence.  But the Court is not required to sentence within a guideline range.  If the Court has good reason to give a sentence above a range or below a range, the only limitation on the Court's sentencing power would be the statutes of conviction.  So obviously we cannot sentence you to more than the maximum provided for that particular statute.

Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  In addition to the guidelines, the Court must also consider the 3553(a) factors.  That means we're going to consider your entire background, your work history, your family history.  We're going to certainly look at the motivation for why you committed these offenses and the nature of the offenses themselves.

Two very important factors in these types of cases would, number one, be the need for deterrence, to make sure that

there's a clear message that people who engage in this kind of conduct will have a price to pay, and to make sure that you don't reengage in this type of conduct. So there are many factors that will go into the sentencing decision.

Now, I'm going to assume that you spent a fair amount of time talking with your attorneys about the possible guidelines that you may get in this case and the possible sentence that might be imposed. Have you had such discussions?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And I'm going to assume that counsel have probably given you their estimates as to what they think your guidelines will come out to be. Have they done that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: They showed you the one-page chart with the guideline table on it?

THE DEFENDANT: They did, Your Honor, yes.

THE COURT: All right. And I don't know whether the government has talked with you as well. They may also have given you some estimates. But what I want to make sure you understand is that no matter what your lawyers may have told you, or the prosecutors or the case agent or anybody else, about the sentence that you might receive, none of those discussions are binding on the Court. And that means that if at the sentencing hearing you receive a sentence that is different from what you were expecting or hoping for, that does not give you a

right to withdraw your guilty pleas in this case.  Do you understand that?

THE DEFENDANT:  I understand, Your Honor.

THE COURT:  Now, defendants normally have the right to appeal both the sentence imposed upon them as well as their convictions.  With a plea agreement that's often used in this court, defendants give up their right to appeal their sentence.  You don't have a plea agreement, so you will have a right to appeal the sentence that's imposed on you.

However, the way the law is structured, when a person knowingly and voluntarily pleads guilty to an offense, he essentially gives up his right to appeal the conviction.  Do you understand that?

THE DEFENDANT:  I understand, Your Honor.

THE COURT:  And have your attorneys explained that to you carefully?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  Now, other than the agreed-upon statement of facts which I assume you worked out with the government, do you believe you have any other agreements whatsoever with the United States government concerning this case?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Mr. Benowitz, is that correct?

MR. BENOWITZ:  That's correct, Your Honor.

12

THE COURT:  So there's absolutely no plea agreement or plea understanding between you-all?

MR. BENOWITZ:  That's correct.

THE COURT:  All right.  Mr. Macaulay, have you had enough time to explain everything you know about this case to your lawyers?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  And have they discussed with you the nature of these four charges and any ways in which you could defend yourself against these charges if you continued with your not guilty pleas and went to trial?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Counsel, did you get full discovery in this case?

MR. BENOWITZ:  Yes.

THE COURT:  And were you able to discuss that discovery with Mr. Macaulay?

MR. BENOWITZ:  Yes.

THE COURT:  Mr. Macaulay, are you satisfied that your counsel have kept you fully advised about their plea bargaining efforts on your behalf?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And it was a careful decision on your part to not go with a plea agreement but rather to plead to the indictment itself?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  Are you fully satisfied with the way in which your counsel have represented you throughout this case?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And do you understand you still at this time have a right to change your mind and withdraw your guilty pleas as to any or all of these charges?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And if you were to continue with your not guilty pleas, and I understand this case is set for trial sometime next week, at that trial the burden would be on the prosecution to prove you guilty of the particular offenses.  You would have no burden to prove your innocence.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And so what the government would have to do in order to convict you of each of these counts is they must prove beyond a reasonable doubt all the essential elements of each of these counts.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  I'm not going to go through all of that with you right now, but the basic thing they would have to prove for all four of these counts, they would have to prove that you engaged in the illegal activity knowingly and intentionally,

which means it was not by accident or mistake or some other innocent reason.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And they would have to show that at least one act in furtherance of each of these four offenses occurred in the Eastern District of Virginia.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Now, if you went to trial, there are certain rights and protections that you would have at trial that you essentially give up by pleading guilty.  At trial you could see all the government's evidence and have it tested through the questions of your lawyers.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  If you wanted to present evidence - again, you would not have to do that - but if you did want to present evidence, then you could ask the Court for help in getting either witnesses or physical evidence brought to the courthouse by having the Court issue subpoenas.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  You could testify as a witness if you wanted.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  You could also invoke your Fifth Amendment right to remain silent, and if you chose not to testify, no inference of guilt could be drawn from your silence.  Do you

understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Of course you would have the right to be represented by counsel at all stages of the trial, and if you could not afford to pay for trial, counsel -- we would appoint lawyers for you, a lawyer for you, at taxpayers' expense.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Now, there are two different ways in which a case can be tried.  The first is to a judge alone, which we call a bench trial; the second is a trial to a jury.  And I believe your case was set for a jury trial next week.  Is that correct?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  In either type of case, whether to a judge or a jury, the same burden is upon the prosecution; and that is that a person cannot be found guilty unless the government proves the defendant is guilty beyond a reasonable doubt.  And if it's multiple charges, the fact that the defendant might be found guilty of one count doesn't necessarily mean he can be found guilty of the other counts.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Each count is evaluated independently.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

16

THE COURT:  All right.  But in the case of a jury trial, for a jury to convict on any count, the jury has to be unanimous.  And that means that if just one juror had a reasonable doubt about a particular count, the jury could not convict as to that count.  We would have to declare a mistrial as to that count and there might very well be a new trial with a new jury on that particular count.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  If you continued with not guilty pleas, your counsel could try to attack the prosecution's case.  And I don't know if there are any grounds that might be successful.  For example, there might be defects, because this is a superseding indictment, in how the indictment was developed.  If you gave a confession or a statement and you didn't get the proper Miranda warnings, there might be a basis to try to suppress that evidence.

I don't know what if any defenses you might have.  But you need to appreciate that when a person pleads guilty, he gives up any and all attacks on the prosecution's case, except you can always raise the issue of whether the Court has sufficient jurisdiction.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And lastly, if you pled not guilty as to any of these four counts, and you went to trial and you were then found guilty as to any one or all four of these counts, you

could take an appeal of that decision to a higher level court. As I mentioned previously, basically because of the way the law is structured, by being found guilty based upon your guilty pleas, you will not be able to appeal your conviction except for this issue of lack of jurisdiction; you will still be able to appeal your sentence.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And did you understand all of that before you entered these pleas?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  Other than the government's agreement to a statement of facts, do you believe that anybody has promised or suggested to you that by pleading guilty rather than going to trial, you would receive a lighter sentence or more favorable treatment by the Court?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Has anyone or anything in your life put any force or pressure on you to plead guilty to any of these counts?

THE DEFENDANT:  No, Your Honor.

THE COURT:  All right.  In terms of the statement of facts that was signed today, I first of all want to confirm, on page 6, your signature appears.  Is that in fact correct, that you signed this statement of facts?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Before you signed the statement of facts,

it has 19 numbered paragraphs.  Did you carefully read over every one of those paragraphs?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Is there anything whatsoever in any of those 19 paragraphs with which you do not completely agree?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Do you understand that by signing the statement of facts, you're doing two things.  One, you are admitting to the truth of everything in those 19 paragraphs; and two, you are admitting that if the case went to trial, the government could prove all those facts beyond a reasonable doubt.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  So as I understand it, you do agree that you were a cofounder of a fitness center called BYNDfit.  Is that correct?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Actually, of several centers.  Right?  There's a Chinatown LLC, a BF Georgetown, Waterfront LLC, a whole bunch of entities?

THE DEFENDANT:  Your Honor.

THE COURT:  And there were two other people, a Raymond Rahbar and a Carl Pierre, involved with some of those businesses, or all of them?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  In then in Paragraph 2 that's in the introductory part of the statement of facts, it identifies four banks with which you had various traditional banking services. Is that correct?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And some of them were located in the Eastern District of Virginia.  Is that correct?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And then basically what is alleged, and I'm not going to go through this entire statement of facts because you've acknowledged that it's all accurate and truthful, but you basically developed a scheme to get payments from the Paycheck Protection Program sponsored by the federal government through the SBA program.  Is that correct?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And that basically you inflated the numbers of employees working for these businesses in order to get significant sums through that program.  Do you agree that that's what happened?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  All right.  And do you agree with the amounts of money that are alleged in this statement of facts? Is there any disagreement as to the monies?

THE DEFENDANT:  No, Your Honor.

THE COURT:  All right.  Do you understand that if the

20

Court accepts your guilty pleas today, there will be no further trial of the issues and you will be found guilty?  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you claim in any respect that you're innocent of the charge in Count 1 of being a member of a conspiracy to commit bank fraud?

THE DEFENDANT:  No, Your Honor.

THE COURT:  How, then, do you plead to that charge?

THE DEFENDANT:  Guilty.

THE COURT:  Do you make any claim that you're innocent of the charge in Count 5, which is the actual substantive bank fraud charge?  Any claim that you're innocent of that charge?

THE DEFENDANT:  No, Your Honor.

THE COURT:  How, then, do you plead?

THE DEFENDANT:  Guilty.

THE COURT:  Do you make any claim you're innocent of the charge of conspiracy to commit money laundering?

THE DEFENDANT:  No, Your Honor.

THE COURT:  How, then, do you plead to that charge?

THE DEFENDANT:  Guilty.

THE COURT:  Do you make any claim that you're innocent of the charge of money laundering as alleged in Count 11?

THE DEFENDANT:  No, Your Honor.

THE COURT:  How, then, do you plead to that charge?

THE DEFENDANT:  Guilty.

THE COURT:  All right.  Mr. Benowitz, have you had enough time to go over all four guilty pleas with your client?

MR. BENOWITZ:  Yes.

THE COURT:  Do they fully accord with your understanding of the facts and circumstances?

MR. BENOWITZ:  Yes.

THE COURT:  In your opinion, have they been entered in a knowing and voluntary fashion by your client?

MR. BENOWITZ:  Yes.

THE COURT:  Do you know of any reason or anything that would suggest that these are not knowing and voluntary pleas?

MR. BENOWITZ:  I do not.

THE COURT:  All right.  Then based on these answers to the Court's questions, I'm satisfied, Mr. Macaulay, that you've entered all four guilty pleas with the full advice of competent counsel, that you've entered all four pleas in a knowing and voluntary capacity, and that the written statement of facts which you fully acknowledged in court today provides more than enough evidence to find you guilty of all four counts.  The Court accepts your guilty pleas, and you are found guilty of Counts 1, 5, 7, and 11 of the superseding indictment.

And in terms of sentencing, I have Judge Giles' calendar here.  Her first available date would be August 7th. Does that work for counsel?

MR. BENOWITZ:  It does not, Your Honor.  We actually had a jointly proposed date of September 4th.

THE COURT:  Why that far down the road?

MR. BENOWITZ:  It's partly because of my summer travel schedule, and also, Mr. Macaulay needs to -- time to ameliorate some tax returns from prior years that have some bearing in this case.

THE COURT:  I don't have Judge Giles' calendar that far out.  What day in September are you saying?

MR. BENOWITZ:  It's September 4th.  And actually, a co-defendant in this case, Mr. Rahbar, his sentencing is set for September 11th.  So we were trying to schedule it --

THE COURT:  Wouldn't it make sense to do it the same day, September 11th, Mr. Hood?

MR. HOOD:  Your Honor, our preference would be to have Mr. Macaulay sentenced before Mr. Rahbar on September 11th.

THE COURT:  All right.  So September 4th works for you-all?

MR. HOOD:  Yes, Your Honor.

THE COURT:  All right.  We'll put it on the calendar, but if Judge Giles for some reason has a conflict that day, then her chambers will get in contact with you.  All right?

MR. BENOWITZ:  Of course.

THE COURT:  I assume that the defendant's bond, there are not any problems with his bond?

MR. HOOD:  Not from the government, Your Honor, no.

THE COURT:  All right.  Then Mr. Macaulay, I just want to advise you that I'm adding orally an additional -- well, two conditions to your bond.  Number one, you must fully cooperate with the probation office in the preparation of the presentence report.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And secondly, that you must reappear in court for the September sentencing date.  I'm going to leave that open, whatever date Judge Giles is comfortable with.  September 4th right now, but if that date changes, you must appear at the sentencing date.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

MR. BENOWITZ:  And, Your Honor, should we set the time on September 4th with Judge Giles?

THE COURT:  I assume her docket is at 10:00.  When is the co-defendant's sentencing set for, what time?

MR. HOOD:  9 a.m.

THE COURT:  Then it's 9 a.m.

MR. BENOWITZ:  That's fine, Your Honor.

THE COURT:  All right.  When you leave the courtroom today, you need to go down to the third floor to the pretrial office, so that they know you've been here, on what your next court dates are, and then over to the probation office to sign up for the presentence investigation.

MR. BENOWITZ:  Understood, Your Honor.

THE COURT:  Anything further on this case?

MR. HOOD:  Not from the government, Your Honor.

MR. BENOWITZ:  No, Your Honor.

THE COURT:  All right.  Then we'll recess court.

(Off the record at 10:59 a.m.)

**CERTIFICATE OF OFFICIAL COURT REPORTER**

**I, Rebecca Stonestreet, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.**

**___//Rebecca Stonestreet//___          __12/15/25_____**

**SIGNATURE OF COURT REPORTER                    DATE**

*Rebecca Stonestreet, RPR, CRR, Official Court Reporter*