```
                    UNITED STATES DISTRICT COURT
              FOR THE EASTERN DISTRICT OF VIRGINIA


  UNITED STATES OF AMERICA        :
                                  :
                   Plaintiff,     :   Criminal Action
                                  :   No. 24-180-PTG
          v.                      :
                                  :   Court of Appeals
  RAYMOND RAHBAR, JR.(1)          :   No. 25-4546
                                  :
                                  :
                                  :   August 20, 2024
                   Defendant.     :   2:17 p.m.
                                  :
  .............................   :
```

**TRANSCRIPT PRESENTMENT PROCEEDINGS**
**BEFORE THE HONORABLE LINDSEY R. VAALA,**
**UNITED STATES DISTRICT COURT MAGISTRATE JUDGE**

APPEARANCES:

For the United States:        **Christopher J. Hood, Assistant U.S.**
                              **Attorney**
                              UNITED STATES ATTORNEY'S OFFICE
                              EASTERN DISTRICT OF VIRGINIA
                              2100 Jamieson Avenue
                              Alexandria, VA 22314
                              703-299-3700
                              Email: Christopher.hood2@usdoj.gov


For Defendant:                **Mark Elliott Schamel, Esq.**
                              VENABLE LLP (DC-NA)
                              600 Massachusetts Avenue, NW
                              Washington, DC 20001
                              202-344-4000
                              Fax: 202-344-8300
                              Email: Meschamel@venable.com Joseph

 Court Reporter:                **Scott L. Wallace, RDR, RMR, CRR**
                                Official Court Reporter
                                United States District Court
                                401 Courthouse Square
                                Alexandria, VA 22314-5798
                                Cell: 443-584-6558
                                Email: Scottwallace.edva@gmail.com

Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.

**AFTERNOON SESSION, AUGUST 20, 2024**

(2:17 p.m.)

THE COURTROOM CLERK:  *United States versus Raymond Rahbar, Jr.*, Case 1:24-cr-140.

MR. HOOD:  Good morning, Your Honor.

THE COURT:  Good afternoon.

MR. HOOD:  Good afternoon, Your Honor.  Chris Hood on behalf of the United States.

THE COURT:  How are you, Mr. Hood?

MR. HOOD:  Well.  How are you?

THE COURT:  I'm alright.  Thanks.

MR. SCHAMEL:  Good afternoon.  Mark Schamel.  I'm here with my colleague, Joanna Steel, and Mr. Rahbar.

THE COURT:  Okay.

MR. SCHAMEL:  And I'll be candid.  I thought we had an arraignment scheduled for Thursday, so our paperwork is not yet in, but we'll be representing Mr. Rahbar on Thursday.

So, with the Court's permission, I'll stand in for presentment, for both our entry of appearance and my *pro hoc vice*.  And I will just offer to the Court that I've been admitted on a number of occasions, and I'm in good standing.

THE COURT:  And what is your last name?

MR. SCHAMEL:  Schamel, S-C-H-A-M-E-L.

THE COURT:  Okay.  And your local counsel?

MR. SCHAMEL:  Is my colleague.  We're both with Venable.

Steele is her last name, S-T-E-E-L-E.

THE COURT:  Okay.

MR. SCHAMEL:  And we're both with Venable, Your Honor.

THE COURT:  Venable.  Okay.

MR. SCHAMEL:  Yes, ma'am.

THE COURT:  All right.  I want to talk about the arraignment date here in a minute, but good morning -- good afternoon, sir.  How are you?  I've had a long day, and I don't know what time it is.  All right.  So we're here on your initial appearance, Mr. -- is it Rahbar?

THE DEFENDANT:  Yes.

THE COURT:  All right.  Mr. Schamel, do you have a copy of the indictment?

MR. SCHAMEL:  I have a copy of the indictment.  The government provided that to us, I think, on Friday.

I also have a copy of the proposed Pretrial discovery order and the Pretrial protective order.  I think they both look fine.  I reviewed them with my client, and I told the government that we would have an answer before we appear on Thursday.

THE COURT:  Okay.  I haven't seen the two orders, but I wanted to make sure you had discussed the indictment with Mr. Rahbar.

MR. SCHAMEL:  We have, Your Honor.  I've had an opportunity to review it with him for some time.

THE COURT:  Okay.  So, Mr. Rahbar, the purpose of today --

this is your initial appearance -- is just for me to inform you of the charges against you and the indictment, and to talk about next steps in your case.

I understand from your counsel that you have already reviewed the indictment and the counts against you.  It's an 11-count indictment, and you are named in all 11 of the counts.

So, I'm happy to go through them, but if counsel has reviewed them in detail, then I don't know that it makes sense for me to do so.  Would you like me to go through them?

THE DEFENDANT:  If I could have --

THE COURT:  -- okay --

THE DEFENDANT:  -- a moment to speak with my counsel.

(Brief pause in proceedings.)

MR. SCHAMEL:  I spoke with Mr. Rahbar.  He would waive any formal reading, as well as on Thursday.  He doesn't {indiscernible}.

THE COURT:  Okay.  All right.  So, Mr. Rahbar, you have counsel already.  So, the next step, because you're named in the indictment and not a criminal complaint, we don't schedule a preliminary hearing, and I don't understand the government to be seeking detention.  Is that correct?

MR. HOOD:  That's correct, Your Honor.

THE COURT:  So, we need to talk about conditions of release for you today, sir.

Counsel, you mentioned the arraignment, and I had looked

at the docket and saw that the co-defendant, Mr. Macaulay, I think.

MR. SCHAMEL: Ryan Macaulay, Your Honor.

THE COURT: Is set for arraignment on the 22nd, but I hadn't actually seen Mr. Rahbar's set, so that was one of the questions I wanted to raise with you.

Would you like the arraignment to be set for the same day?

MR. SCHAMEL: I believe he's at 9 a.m. on Thursday.

THE COURT: Yes.

MR. SCHAMEL: And if that's available, we would like that as well, Your Honor.

THE COURT: Mr. Hood.

MR. HOOD: We absolutely concur. We intend to reach out to Judge Giles's chambers to get that scheduled, but I did have an indication that there will not be an issue with having Mr. Rahbar's arraignment on Thursday at the same time as Mr. Macaulay's.

THE COURT: Okay. I did reach out to her chambers, and I know she's available any Thursday at 9 a.m., but that would include this coming Thursday. So, if you all want to do it on the same day, that's fine, and we'll just go ahead and set the arraignment before her, August 22nd at 9 a.m. for Mr. Rahbar as well.

MR. HOOD: Thank you, Your Honor.

THE COURT: Okay. And then does the government have -- is

the government seeking conditions of release?

MR. HOOD:  The standard conditions of release, we believe, would be appropriate.  There is one thing that I have discussed with counsel for Mr. Rahbar.  It relates to contact with potential witnesses in this case.  I am not going to put this person's name on the record, per that person's request, but I have spoken with Mr. Schamel, who has informed me that he has spoken with his client about this specific individual.  So --

THE COURT:  So, there's a particular witness that you want to include or all witnesses?

MR. HOOD:  Um --

THE COURT:  You don't have to say the person's name, if there's an understanding between counsel, but I'm just trying to understand if it's one person or several.

MR. HOOD:  I think it's a specific witness, but I think it would be appropriate in this situation -- should that change, we would come back to the Court and ask to amend the conditions.

THE COURT:  Okay.  And when you say the standard conditions, what do you mean?

MR. HOOD:  Um, the -- I didn't -- I did not see if the Pretrial report was issued in this case.

THE COURT:  It wasn't.

MR. HOOD:  It would be the conditions of, you know -- the conditions that are normally imposed in a case like this.  So I think the conditions that -- we are not looking for home

detention or anything along those lines.  We'll restrict travel to within the jurisdiction, surrender of the passport, and not opening any bank accounts or new lines of credit without the approval of probation, I think are the conditions that stick out to me, as I think would be appropriate here, and any other conditions that Your Honor or Pretrial Services deems appropriate.

THE COURT:  Okay.  I have a few in mind.  Go ahead, if you want to respond to those.  I have a few more in mind, but I'll hear from the parties.

MR. SCHAMEL:  I was just going to tell Your Honor a little bit more detail.  Government counsel did inform us that there was one particular witness who was contacted; doesn't want to be contacted.  I have spoken to my client.  We are aware of who that person is.  He's agreed to have no contact with that person.

Some of the other potential witnesses, both defense and the prosecution, are good friends with Mr. Rahbar.  One is a lawyer, for example, at Latham & Watkins.  He is going to see Mr. Rahbar, wants to see Mr. Rahbar.  They're just not going to talk to him about the case.

THE COURT:  Okay.

MR. SCHAMEL:  So he understands that, to the extent that he has friendships with anybody, he's not talking about the case, and I think the government's okay with that.

And if something comes up, we'll obviously address that.

On the standard conditions, I just want to let Your Honor know that he has an expired passport only.  I will take possession of that.  I'm happy to turn over the expired passport, but he's not going to make any more passport applications.

As far as travel, I don't know that he has any need to travel anyplace else in the United States, but I think that, quote, "in the jurisdiction" I've always interpreted to be within the DMV.  And as long as it's within the DMV area -- he's permitted to travel elsewhere.

And if Your Honor wants to know, if he is going to go to Florida, for example, or go someplace else, that he do so after contacting Pretrial, that's fine.  But I don't see him being able to travel anyplace.  Obviously, he has no passport, so he can't leave the country.

THE COURT:  Okay.  Yeah.  Usually it's restricted to the DMV, which would include this district, obviously, and then, if there's additional specific travel that he would want to do outside of the area, then he would get -- you don't necessarily need my approval; you really need pretrial's approval -- or probation's approval.  And if they didn't agree with those and there was a dispute, then you would come to the Court.

MR. SCHAMEL:  And -- I just want to be perfectly clear, if I wasn't, Your Honor.  Underlying this allegation, which we, frankly, don't think is criminal, but, underlying it, there are a number of civil suits that arose out of the same situation, and

so Mr. Rahbar's involved in litigation in Minnesota, I think, Vienna, California, and a number of other states.  He may have to travel to those states for court appearances.  I can't imagine that would be a problem, and we would just ask that, as long as he informs Pretrial -- here's what I'm trying to say, because sometimes I've seen this sort of go sideways.  There is a difference in the language of "let Pretrial know" versus "ask for pretrial's permission," because then, if the Pretrial officer isn't around, they say, We don't have enough time to check it out.

I would just like it for him to be able to travel, and we'll -- and I'll -- I'll -- I always do it, so there's no misunderstanding.  He's got a court date on this date; here's how he's getting there; here's where he's staying; here's when he'll be back, and I'm happy to send that to Pretrial for anything outside of that.

THE COURT:  That seems good to me, Mr. Hood.

MR. HOOD:  That's acceptable to the government, Your Honor.

THE COURT:  Okay.  So, what I'll do for that one is travel restricted to the DMV area, but any travel outside of the DMV area needs to notify Pretrial in advance, and that's domestic travel.

Any travel internationally -- he doesn't have a passport, so can't do it -- but if he wanted to, he would need to have

pre-approval from Pretrial to travel outside of the United States.

The other ones that I was thinking about, just as a threshold matter -- We need Pretrial Services supervision for all of this, so that's a condition. I did talk with Pretrial, and usually they -- in a case like this, they would like access to financial records as requested. And it's really forward-looking so they can determine that he isn't seeking bank loans or opening new lines of credit. It's not looking at his previous financial records, and it's really just as an as requested basis so that they can confirm that there are no new lines of credit or other financial transactions being entered into. Does that make sense to you?

MR. SCHAMEL: I'm familiar with the request. It's sort of an interesting one, because, again, it's all dependent upon the Pretrial Services officer. I've never had a problem in this jurisdiction with it, but they want a blanket waiver, and then they start to poke around. And the concern, particularly in a case like this, is, if they contacted the bank or someplace, all of a sudden they start shutting down his existing accounts. It just becomes a big mess that I sort of --

THE COURT: I think he would provide them, rather than they contact the bank. I always ask about this one because I don't want it to be necessarily a blanket request that people don't understand.

So, my understanding would be that he would provide records, like his current checking account statement, if they ask for it, or his current, you know, loans or whatever that they ask for; that they wouldn't go and contact the financial institutions themselves.

MR. SCHAMEL:  That seems unnecessary but reasonable.  If that's what Your Honor wants, we'll, of course, abide by it.  He understands his conditions, so if he tries to open something, he's got a bigger problem.

THE COURT:  Okay.  And it really is just -- I probably put the cart before the horse.  It's really to confirm this next one, which is not to open any new lines of credit, loans, or bank accounts, unless approved by the Pretrial Services or by the Court.

So, in order to verify that he is in compliance with that, they might periodically ask for current bank statements or bank records, that's all.

MR. SCHAMEL:  I think that's fine.

THE COURT:  The next one is about employment.  So they suggested no self-employment, and all future employment to be approved in advance by Pretrial Services.

What is his current employment status?

MR. SCHAMEL:  He's an entrepreneur.  He's started many businesses, so he hasn't worked for people for a number of years. He's got a graduate degree and a lot of skills and ability, but

he doesn't have sort of a additional résumé, so to speak.

The work he does is in that sort of realm, so I don't know how he could not work for himself, depending on what we get for a trial date, how long this takes and what happens.  I guess I would just ask Your Honor not to make that a condition now, and we can play that by year if it becomes an issue.

Honestly, he's not going to be doing a lot of entrepreneuring [ph], if that's such a word, if he can't open new lines of credit and that sort of thing.  And so he's going to be limited, and I think he's going to be focussed on the trial pretty much.

THE COURT:  What about the business entities that are involved in the current charges?

MR. SCHAMEL:  All of those business entities are all associated with what I'll call the core enterprise, and that is the litigation that he's involved in because it's a gym.

THE COURT:  And is it operable?

MR. SCHAMEL:  They're all in bankruptcy, in one form or another.

THE COURT:  So they're all --

MR. SCHAMEL:  And before he sort of jumps up, some of them are out of bankruptcy; some of them switched to 11 from 7.  I'm not a bankruptcy expert, but none of them are operational, is my understanding.

THE COURT:  Okay.  So, also the Pretrial Services -- and

this is fairly standard, but I understand there is some -- there might be a couple of prior DUIs, and so they asked for him to submit to alcohol and substance abuse testing and treatment, as directed by Pretrial Services.

MR. SCHAMEL:  I think he does have -- he had a prior issue with his license, and it took a period of time to get it reinstated.  I think that was part of that, as I understand it.  But, if they wanted testing -- I'm always sort of reluctant on alcohol testing, because unless you get it within a couple of hours of having a drink, it doesn't really give you much.

THE COURT:  But they also ask for no excessive abuse of alcohol.

MR. SCHAMEL:  I would ask for the same.

THE COURT:  You would ask for the same?

MR. SCHAMEL:  I want him to be focused, so I don't think it's an issue.

THE COURT:  Okay.  So, I'll go ahead and do those.  And then, on the witness points, I actually had "no contact with co-conspirators or victims unless in the presence of counsel," and it sounds like we need to add in a specific witness that the parties are aware of.

MR. HOOD:  Yes.  I would agree, Your Honor.  As far as co-conspirators, I think that it is correct that they are friends, but, to the extent that they should not be in contact as it relates to the substance of this case, I am totally in

agreement -- I'm in total agreement with Your Honor, and I would request that specific witness, who the parties have an understanding of, to not be contacted at all.

THE COURT:  Okay.  So what's the position with co-conspirators?  There are some that he's socially friendly with, because this would be no contact with co-conspirators or victims, unless in the presence of counsel.

MR. HOOD:  Um, I think that that condition -- that condition is acceptable to the United States, Your Honor.  I do want to make it explicit that it includes not just this charged co-conspirators but the other co-conspirator who is not included on this -- on this charging document but is referenced throughout the indictment.

THE COURT:  And does Mr. Rahbar's counsel know who that person is?

MR. HOOD:  I believe so.

THE COURT:  He's nodding.  Okay.  Do you have a response to this one?  This is very standard, but....

MR. SCHAMEL:  I totally understand, but, like most things, this case is sort of complicated.

Twofold.  One is I don't really know that there's a, quote, victim, because the only alleged victim here, I think, is the United States.  This has to do with COVID relief fraud, so there's not really anybody that I see that falls into that category.

THE COURT:  I think there's identity theft alleged victims.

MR. SCHAMEL:  There's two victims.  One is the co-conspirator that we were just referencing.  He alleges that Mr. Rahbar used his identity without his permission.

And then another woman that's known to us.  He's obviously not going to have contact with her because she's a witness, and I don't want that to be a bigger problem.

But the other folks that were involved in this business entity are all involved in this other ongoing litigation with investors that I was just referencing a moment ago in different states.  Almost all of them are *pro se*, and so they are dealing with the civil litigation, which, frankly, involves millions of dollars of loans and a lot of potential liabilities.  And so I don't know how they can handle the civil litigation and not be in contact with one another.

And I would ask that Your Honor just simply -- because I -- I've heard -- we've heard from a number of the witnesses.  The FBI talks to them and they call us.  And I talked to the lawyers for both of the -- the charged and the uncharged cooperating co-conspirator.  I've talked to both of them, so I think that area is fine.

If there's other people like this young woman that we don't put on the record, he's not going to have any contact with her.  But the folks that he has to talk to as part of the other

civil litigation, I guess I would just -- let's not address a problem that's not a problem yet.  If it becomes an issue -- obviously, he understands that if he does anything to try to influence or impede, it's a potential second charge or an additional charge.

And if one of them comes to the government, we could -- I think we can address that immediately.  And if we need to come back to Your Honor -- I just --

THE COURT:  I'm not trying to create a problem.

MR. SCHAMEL:  Yeah.  I totally understand, Your Honor.  I just don't want to be sort of a bur in your saddle to keep coming back and saying he has to talk to this guy because of this particular thing, and we could spend a lot of time and effort on that piece of it.  That's my thought.

THE COURT:  So, Mr. Hood, is it no contact with co-conspirators?

MR. HOOD:  Yes, with charged and uncharged co-conspirators, and with the victim in this case.  I believe they are correct that the victim is, for the most part, the United States, and additionally this -- I think the victim as alleged in Count 9, and then third would be this other victim whose name will not be on the record but is known to both parties.

THE COURT:  So, what we're going to do is the one victim that's known to both parties, and any charged or uncharged

co-conspirators.

MR. HOOD:  Yes.

THE COURT:  Does that cover --

MR. HOOD:  Yes.

MR. SCHAMEL:  But I think the one thing that we're also in agreement in is for the individual identified as H.B., who falls into neither of those categories, but is identified as an identity theft victim, and I want to make sure that -- this is Count 9.

So it's -- I guess it's -- I guess it's Victim H.B.  It is a witness who is known to the parties, and it is charged and uncharged co-conspirators.

THE COURT:  Can you live with that?  Is it the "charged and uncharged co-conspirators" that's the problem or no?

MR. SCHAMEL:  It is.  The uncharged co-conspirator/cooperator, I don't have -- I can tell you he's been reaching out, and I've said, Don't talk to him, he's got a lawyer, and I'm going to deal directly with the lawyer, but the other gentleman that is coming into court on Thursday, the charged gentleman that's going to be here on Thursday, Mr. Macaulay, he is in contact with Mr. Rahbar.  He would like to be.

He and his lawyer and I have talked about it.  We would like them to be because they have to deal with the civil stuff that, frankly, I don't want to be dealing with.

So, as long as they're not talking about the criminal case, I think that that would be okay, because if he -- my understanding is he hasn't asked to not be contacted, and I talked to his lawyer, Mr. Benowitz and Mr. Kirby, his lawyers, and they seem to be okay with it, as long as he's not talking about the case.

THE COURT:  So how about this:  Victim H.B., the witness known to the parties, and charged and uncharged co-conspirators, other than Mr. Macaulay?

MR. SCHAMEL:  Yes.  I don't think there's any -- I'm not aware of any other uncharged co-conspirators.

MR. HOOD:  Yeah, that's fine.

THE COURT:  Okay.  All right.  So here's what we're going to do.  After all that, we're going to -- let's do that one first.  So, no contact with Victim H.B., who's identified or referenced in Count 9; the witness that is known to the parties that we're not stating on the record; and charged and uncharged co-conspirators, other than Mr. Macaulay, outside of the presence of counsel.  So that's one.

Pretrial Services supervision, provide access to -- or provide copies of financial records to Pretrial Services as requested.  Do not open any new lines of credit, loans, or bank accounts, unless approved by Pretrial Services.

I'm going to scratch the employment one, scratch the "terminate all existing companies."  I'll do, "Submit to

substance abuse and alcohol testing and/or treatment as directed by Pretrial Services," and "No excessive use of alcohol."

And, then, counsel is going to maintain possession of the expired passport.  Travel is restricted to the DMV area with the exception that Mr. Rahbar can travel domestically related to his case with prior notification to Pretrial Services.

Mr. Hood, did I get them all?

MR. HOOD:  Yes, Your Honor.  Impressive.

THE COURT:  Okay.  Good.  All right.  Hopefully, the courtroom deputy also got them, but we will issue that.  I'll sign that as soon as we're done today.

And I have set the arraignment now for Mr. Rahbar for this Thursday, the 22nd, in front of Judge Giles at 9 a.m.

Anything else on Mr. Rahbar's case this afternoon?

Oh, you know what?  I have counsel present, so I'm also going to give the Due Process Protections Act reminder.

Mr. Rahbar, this is a reminder that the Court gives in every criminal case to the government about its disclosure obligations in your case.

So, pursuant to criminal rule of civil procedure 5F and the Due Process Protections Act, the United States must adhere to disclosure obligations set forth in *Brady versus Maryland* and its progeny.

*Brady versus Maryland* instructs that the suppression by the prosecution of evidence favorable to an accused violates due

process where the evidence is material, either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

Failure to adhere to this requirement may result in serious consequences, up to and including exclusion of evidence, adverse jury instructions, dismissal of charges, contempt proceedings, disciplinary action, or sanctions by the court.

And I have a written order that will be entered on the docket to the same effect.

All right.  Anything else, Mr. Hood, on this case this afternoon?

MR. HOOD:  Not really, Your Honor.  I am prepared for the maximum penalties, to the extent that Mr. Rahbar might hear them, but I feel confident that his counsel has already gone through that, and we are also happy to go through those at the arraignment, if should we decide it's more appropriate at that time.

THE COURT:  Okay.  They would -- We have 11 counts, so they could go on for a while, but it's important to put them on the record so, unless defense counsel wants to waive them, I think we should state the maximum penalties on the record for the charges.

MR. SCHAMEL:  It's up to the Court.  He knows them, we've gone over them, and we have the arraignment on Thursday, and

we're not going to get penalized, so we're okay.

THE COURT:  Well, then, I'm willing to waive them in this instance based on that representation.  Anything else?

MR. HOOD:  Not for us.

THE COURT:  Mr. Hood?

MR. HOOD:  Not from the government, Your Honor.

THE COURT:  All right.  Well, you all have a date with Judge Giles later this week.

MR. SCHAMEL:  May we be excused, Your Honor?

THE COURT:  Yes.

MR. SCHAMEL:  Thank you very much, Your Honor.

(Proceedings adjourned at 2:38 p.m.)


**C E R T I F I C A T E**


I, Scott L. Wallace, RDR-CRR, certify that the foregoing transcript of proceedings was prepared from an FTR Gold audio recording of proceedings in the above-entitled matter and was produced to the best of my ability.  Indiscernible indications in the transcript indicate that the audio captured was not clear enough to attest to its accuracy.


 /s/ Scott L. Wallace                      01/16/2026

 ----------------------------       ----------------
   **Scott L. Wallace, RDR, CRR**                 **Date**
     **Official Court Reporter**