UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

**UNITED STATES OF AMERICA**        :
                                    :
                 **Plaintiff,**     :   Criminal Action
                                    :   No. 24-180-PTG
        **v.**                      :
                                    :   Court of Appeals
**RAYMOND RAHBAR, JR.(1)**          :   No. 25-4546
                                    :
     **and**                        :
                                    :   August 22, 2024
**RYAN MACAULAY (2),**              :   9:00 a.m.
                                    :
                 **Defendants.**    :

.............................


**TRANSCRIPT OF ARRAIGNMENT PROCEEDINGS
BEFORE THE HONORABLE PATRICIA TOLLIVER GILES,
UNITED STATES DISTRICT COURT JUDGE**

APPEARANCES:

For the United States:        **Christopher J. Hood, Assistant U.S.
                              Attorney**
                              UNITED STATES ATTORNEY'S OFFICE
                              EASTERN DISTRICT OF VIRGINIA
                              2100 Jamieson Avenue
                              Alexandria, VA 22314
                              703-299-3700
                              Email: Christopher.hood2@usdoj.gov

                              **Kristin S. Starr, Assistant U.S.
                              Attorney**
                              UNITED STATES ATTORNEY'S OFFICE
                              EASTERN DISTRICT OF VIRGINIA
                              2100 Jamieson Avenue
                              Alexandria, VA 22314
                              703-299-3700
                              Email: Kristin.Starr@usdoj.gov

APPEARANCES:   (Cont.)


For Defendant Rahbar:          **Mark Elliott Schamel, Esq.**
                               VENABLE LLP (DC-NA)
                               600 Massachusetts Avenue, NW
                               Washington, DC 20001
                               202-344-4000
                               Fax: 202-344-8300
                               Email: Meschamel@venable.com

                               **Christian Schreiber, Esq.**
                               VENABLE LLP (DC-NA)
                               600 Massachusetts Avenue, NW
                               Washington, DC 20001
                               202-344-4000
                               Fax: 202-344-8300
                               Email: Cschreiber@venable.com

For Defendant Macaulay:        **Rammy George Barbari, Esq.**
                               PRICE BENOWITZ LLP (DC)
                               409 7th St NW
                               Suite 200
                               Washington, DC 20004
                               202-417-6000
                               Fax: 202-664-1331
                               Email: Rammy@pricebenowitz.com

                               **David Barry Benowitz, Esq.**
                               PRICE BENOWITZ LLP (DC)
                               409 7th Street, NW
                               Suite 200
                               Washington, DC 20004
                               (202) 417-6000
                               Fax: (202) 664-1331
                               Email: David@pricebenowitz.com


Court Reporter:                **Scott L. Wallace, RDR, RMR, CRR**
                               Official Court Reporter
                               United States District Court
                               401 Courthouse Square
                               Alexandria, VA 22314-5798
                               Cell: 443-584-6558
                               Email: Scottwallace.edva@gmail.com


 Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.

**MORNING SESSION, AUGUST 22, 2024**

(9:02 a.m.)

THE COURTROOM CLERK:  The Court calls *United States of America versus Raymond Rahbar, Jr. and Ryan Macaulay*, Case Number 1:24-cr-180.

May I have appearances, please, first for the government?

MR. HOOD:  Good morning, Your Honor.  Chris Hood and Kristen Starr on behalf of the United States.

THE COURT:  Good morning to both of you.

MS. STARR:  Good morning, Your Honor.

MR. SCHAMEL:  Good morning, Your Honor.  Mark Schamel. I'm here with my colleague.  We do not have our appearances entered yet this morning.  I would like to explain to Your Honor why.  We have been dealing with the government on this matter for a couple of weeks.  The indictment came down.  We're finalizing the engagement.  We anticipate that will be done in the next day or so.

We did appear two days ago for the presentment, and I would just ask the Court's permission for this morning to allow us -- my *pro hac* will be pending, and we'll have our appearances in by, I think, the end of the week.

If Your Honor wants a date certain, I'm happy to do that as well, but I would ask Your Honor that we be allowed to go forward with the arraignment this morning knowing that we are entering our appearance shortly.

THE COURT:  It's fine for this morning.  I do want it taken care of by the end of the week, so one day.

MR. SCHAMEL:  Thank you, Your Honor.

THE COURT:  Good morning to you.  Just to be clear, you represent Mr. Rahbar?

MR. SCHAMEL:  Yes, Rahbar, Jr., Your Honor.

THE COURT:  Okay.  Good morning, Mr. Rahbar.

MR. SCHREIBER:  And just for the record, my name is Christian Schreiber.  I'm the local counsel.

THE COURT:  Okay.  Good morning.

MR. BARBARI:  And good morning, Your Honor.  Rammy Barbari and David Benowitz on behalf of Mr. Ryan Macaulay, who is present.

And, Judge, we will be entering our appearances this morning.

THE COURT:  Good morning to you, and good morning, Mr. Macaulay.  So we're on this morning for arraignment, and so if counsel could step to the podium.  And with respect to -- and actually, I'm going to do -- let me just take care of first confirming that you received a copy of the indictment.

MR. SCHAMEL:  Yes, Your Honor.

THE COURT:  And you reviewed that with Mr. Rahbar?

MR. SCHAMEL:  Yes, Your Honor.

THE COURT:  Does he waive formal readings?

MR. SCHAMEL:  He does, Your Honor.

THE COURT:  And how does he plead to the charge?

MR. SCHAMEL:  Not guilty, Your Honor.

THE COURT:  Okay.  And so we'll discuss trial dates in a moment.

MR. SCHAMEL:  Yes, Your Honor.

THE COURT:  Now counsel for Mr. Macaulay.

MR. BARBARI:  Yes, Your Honor.

THE COURT:  And have you and your client received a copy of the indictment?

MR. BARBARI:  We have, Your Honor.

THE COURT:  And have you had time to review it with him?

MR. BARBARI:  We have.

THE COURT:  And does he waive formal reading?

MR. BARBARI:  He does, Your Honor.

THE COURT:  How does he plead?

MR. BARBARI:  Not guilty.

THE COURT:  Not guilty.  And so with respect to trial dates, have you all discussed those with the government?  You both may just stand up there.

For speedy trial, I see it's October 29th, based on, I think -- I don't know which defendant already had his appearance before court, but they have a later speedy trial, and that's what then applies in the case.

MR. HOOD:  That's correct, Your Honor.  Mr. Rahbar appeared on two -- two days ago, so the speedy trial deadline is

October 29.  Macaulay's first appearance in this case is today, so his speedy trial date is October 31st.

Because we would like to try these defendants together, we assert that the appropriate speedy trial deadline is October 29th.  The United States is prepared to go forward with a trial that week.  We would prefer that week, but I understand that there may be some conflicts with the schedules of their counsel.

THE COURT:  Okay.  Because speedy trial is October 29th, and I don't move that lightly, ever, really, unless there's a basis.

MR. SCHAMEL:  We understand.

THE COURT:  So, if it's not the 29th, that means we'll go earlier.

MR. SCHAMEL:  Well, I guess, Your Honor, I'm sitting in a jury in the District of Columbia that's going to last through the month of October on the 2nd of October, and this is a fairly complicated case.

We are getting a reverse proffer today.  Let me be clear.  I'm Mark Schamel for Mr. Rahbar, just for the record.  We haven't seen a single thing of discovery.  I'm not even really sure, candidly, what sort of --

THE COURT:  Well, this is an arraignment, so it's not unusual that you haven't seen discovery to date.

MR. SCHAMEL:  Totally understand, Your Honor.  And I'm not suggesting otherwise.  If I was, I apologize.  I was not trying

to.  My position being that I don't really know some of the complexities of this case, and here we are at the end of August, and I can tell Your Honor I'm picking a jury October 2nd, and I'll be in trial for the month of October.

And so what I'm saying to Your Honor is I would like an opportunity to tender a reverse proffer today, understand what the case is about, see the discovery, which I understand I'm going to be getting, if not at the end of this week, the beginning of next, to make a determination.

But I believe this is a complicated case that involves hundreds of different transactions, involves at least a score or more of potential witnesses.  We don't know who those people are. I'm just not in a position to tell Your Honor.

THE COURT:  And I understand.  And I -- I don't -- given that you have local counsel here, I understand that you don't practice in this district regularly.  These types of cases are not unusual for us, and when parties appear at arraignment, we're setting the date at the arraignment.

Now, if there's some reason that you need to come back and ask the Court for a different date, we'll handle that then, but I'm setting the date now.

MR. SCHAMEL:  I understand.  And just so Your Honor is clear, I have been trying cases in this courthouse for about 15 years.

THE COURT:  Okay.  Good.  Then you know.

MR. SCHAMEL:  And so I know a little bit about it; Just not in front of Your Honor.

THE COURT:  Then you know the practice.

MR. SCHAMEL:  I do.  And what I'm just indicating for Your Honor is I'm trying to tee it up that I believe it's going to be an issue, and I will be coming back probably for a date in --

THE COURT:  Well, if there's a need for this case to be -- I don't know what the size of the government's discovery is.

MR. HOOD:  The discovery is, I would say, voluminous, but certainly not like some of the other complicated cases that appear in this district.  It's on the magnitude of about 8,000 or so documents that excludes the search warrants and the e-mail accounts that we obtained.  There are 5 e-mail accounts for which there are e-mails.  So, in some ways, it's, perhaps, quite voluminous.

THE COURT:  Okay.  So, is there a reason that this case should be declared complex?

MR. HOOD:  So, Your Honor, our position is that a date within the speedy trial deadline is appropriate, but I do agree with counsel for Mr. Rahbar and also counsel for Mr. Macaulay that this case could be complex.  There are a number of entities here.  There's a number of transactions.  It's 11 counts, including bankruptcy fraud which is not particularly commonly charged in our office.  And given the amount of discovery in this case, I think that there is at least a colorable argument that

this case could be considered --

THE COURT:  8,000 does sound like a lot.

MR. HOOD:  Excluding the search warrants, which I believe probably would, perhaps, double that number.

THE COURT:  That does sound like a lot and complex. Submit an order, a proposed order for me to consider in regards to declaring it complex, okay?  And I'm doing that based on the size of the discovery, just based on your representation.  We're talking about 16,000 documents, at least.

MR. HOOD:  Yes, Your Honor.

THE COURT:  Okay.

MR. HOOD:  I believe the parties have discussed -- to the extent that Your Honor is inclined to set this outside of the speedy trial deadline, I believe the parties have discussed January as a potential date.

So, if the Court wanted to tentatively set a date for this trial in January, and then with the understanding that I would submit a proposed speedy trial order later this afternoon, we would be amenable to that.

THE COURT:  Okay.  Let's do that.  And you all review the order, the proposed order that's coming to the Court, because this does sound like it's going to be complex.

And I will set it outside of the speedy trial.  I want to enter the order today as well, so let's look at our calendars for January.

Just so you know, I normally start trials on the Tuesday.

MR. SCHAMEL:  May I ask a question, Your Honor.  Does that change that we're considering the week of the MLK holiday?  Because Tuesday is effectively --

THE COURT:  I should have asked, how long do you anticipate this trial taking?

MR. HOOD:  I think the government's case would take five days, four days if we do not need to call in document evidence.

THE COURT:  Okay.  So I will start it on the Wednesday of that week, because --

MR. SCHAMEL:  The 22nd?

THE COURT:  Because we're going to flow into the second week anyway.

MR. HOOD:  Your Honor, I think the parties are available either January -- January 22nd or Tuesday, January 28th, and we respectfully request one of those two days.

THE COURT:  Well, I'm open to either, so if you have a preference, let me know.

MR. SCHAMEL:  Court's indulgence.

MR. HOOD:  22nd, Your Honor.

THE COURT :  Okay.  So we'll set the trial for the 22nd.  I typically set a motions day.  And in this case, given the size of the discovery, I normally would give 20 days to file motions.  In this case, I'm going to give 60.

MR. SCHAMEL:  Six-zero --

THE COURT:  60 days for you to file your motions.

MR. SCHAMEL:  Thank you.

THE COURT:  And then responses, I'll give you 20 days for responses.

MR. HOOD:  20 days, Your Honor?

THE COURT:  20, okay, in terms of a motions hearing date. Since we're set for trial on the 22nd, January 9th for a motions hearing.

MR. SCHAMEL:  January 9th, 9 a.m., Your Honor?

THE COURT:  Yes, yes.  Now, if the motions involve any type of evidentiary hearing, I would move it to a different date instead of my -- I would move it to the Tuesday of that week, which would be the 7th, just because the 9th is my normal motions -- my normal criminal docket, and I have my civil docket right after it.  So, if it's going to be more extensive, I would move your motions hearing to earlier in the week.

MR. SCHAMEL:  May I ask a question?

THE COURT:  Yes.

MR. SCHAMEL:  So, if we file -- like, I -- I just learned how many documents there were, so I have no representations of what we're going to file, but if we file a motion that we think, we the defense, are going to call a witness or present more than just argument, do we then get in touch with chambers when we file?  What's your procedure for letting you know to move that date?

THE COURT: You can file something, yes.

MR. SCHAMEL: Okay.

THE COURT: Just file a notice with the Court indicating that you're going to be calling witnesses.

MR. SCHAMEL: Okay.

THE COURT: And then I'll know to move it.

MR. SCHAMEL: And then it will just automatically move this up?

THE COURT: I mean, you can flag it for me, but that's what would happen. I would move it up two days to the Tuesday.

MR. SCHAMEL: Totally understand. Got it.

THE COURT: And I see you handed up the discovery orders and joint motions for the stipulated protective orders. I'll enter those today.

In terms of -- first, with respect to Mr. Rahbar -- and I know those conditions, the order has already been entered, but I understand that during his interview he disclosed a firearm.

MR. SCHAMEL: May I?

THE COURT: Yes.

MR. SCHAMEL: I talked to pretrial services yesterday. He wasn't released until after 5:00 yesterday, so we checked in yesterday. They just asked that, because he has two legally owned firearms, that he have those moved out of his house. He's agreed to do that. It's not an issue. And I didn't even know they were going to raise it again, so he just moved them and

they're fine.

THE COURT:  Okay.  I just want to note that that condition will be added, just so it's clear.

MR. SCHAMEL:  That's fine.  And if they're not gone today, they'll be gone by tomorrow.

I was going to raise an issue.  And I don't know if Your Honor has it in front of you, page 2 of 4 of the order in front of you.

THE COURT:  No, I don't.

MR. SCHAMEL:  We had some extensive conversation, I think -- and Mr. Hood will correct me if I'm wrong.  We had an agreement with the magistrate judge, and the language is correct, essentially, in here, but it's a little bit unclear, and I just wanted to, as it relates to paragraph 7 and it's G on the standard order.

THE COURT:  I'm not so sure that I have --

MR. SCHAMEL:  If it helps, Your Honor, it's Document 8 that was filed on 8-20.

THE COURT:  I have it.

MR. SCHAMEL:  You do?  Thank you, Your Honor.  On page 2 of 4, in the middle of this preprinted form that has handwriting on it, I don't know if yours is legible; mine was not particularly, but it says, "on genius [ph] check" it says, "avoid all contact" et cetera, et cetera, et cetera, "including," and then that was the language that we sort of worked out, which was

"charged and uncharged co-conspirators, other than Mr. Macaulay, Victim HB referenced in Count 9, and witnesses known to the parties."

And the two things that I wanted to raise -- and they're very technical, so I apologize -- one is its "witness." So there's one particular witness, and we -- that witness doesn't want to have that person's name on the record, but the parties understand who that witness is. Mr. Rahbar has agreed not to have contact with that particular witness, but it's not "witnesses." It's just "a witness."

And separately, because of the way that reads, in the preprinted form it says, "including," it says it as though it's in addition to the preprinted as opposed to in replacing the preprinted.

So I would just ask Your Honor that the final order, this new one that you're going to issue indicating that he have no firearms --

THE COURT: I'm just going to add -- I'm not going to issue an entirely new form. I'm just going to enter an order adding the --

MR. SCHAMEL: -- okay --

THE COURT: -- condition regarding the firearms. With respect to "witnesses," I am reluctant to change that because, although there may be one witness now, as this case develops, there could be multiple witnesses, and so I think that is

appropriate.

MR. SCHAMEL:  There are multiple witnesses.  I'm not suggesting otherwise.  What I'm saying is -- and this is what we were talking about at the presentment on Tuesday -- there's a lot of civil litigation around this matter.

Most of the people that are involved are *pro se*.  There are cases pending in multiple jurisdictions.  So one of the things that we had discussed was the fact that Mr. Rahbar in the civil context, as Mr. Hood represented about the bankruptcy proceedings, he has to have contact with some of these folks.

I mean, I don't know what we do between now and February with all of these pending cases.  And then -- he's not going to their houses, but some of them are witnesses in hearings.  Some of them are -- one witness in particular that the government is aware of, is a lawyer, one of Mr. Rahbar's best friends, and they get together regularly for lunch.  And he, through his lawyer, has spoken to the government and spoken to me and said they want to continue having lunch and see each other.

So, we're trying to fashion something here that simply says, if there's a witness -- and there's one -- that doesn't want to see him, he won't.  If the government brings us the name of another witness who doesn't want to see him, he won't.

If he sees witnesses, he obviously won't talk about the case.  We agree with that.  But there's a number of other people in his life, for example, his mother, I understand from the

government, is a witness.  He's not supposed -- and so this would seem to indicate he can't see his mother.

THE COURT:  Mr. Hood.

MR. HOOD:  Your Honor, I generally share your concerns about Mr. Rahbar contacting people who are witnesses.  I also agree with Mr. Schamel that many of the folks that were involved in this company -- and to sort of preface what this case is about, Mr. Rahbar intended to start a business and elicited many, many people as employees on his PPP applications.  Most of those people were not actually employees of the company.

And so the people that he listed are often his friends and family.  So, to the extent that those folks will be witnesses, I understand the idea that they also have a relationship with Mr. Rahbar outside of that, and I don't know how or if we would be able to police that relationship.

I do agree, and I think strongly contend, that it is inappropriate for him to talk about the case.  As it relates to the specific individual who we spoke about with Mr. Rahbar, we are concerned about that person, and that person does have an attorney and, through that attorney, has reached out to us.

So, I would have no issue with some form of restriction on his communication with witnesses with the understanding that it's a somewhat complicated situation here.

As relates to the civil lawsuits, just as an aside, I'm not certain of the status of any of those lawsuits.  My

understanding is that many of them have been resolved, but certainly Mr. Rahbar and Mr. Schamel would know better than I would.

THE COURT:  I'm going to let you all think about this some more and submit something to me in writing on what you think the parameters should be, okay?

Because perhaps the way to do it is for it to be limited to not allowing his contact with this particular witness who doesn't want him to have contact with and also not having any -- not discussing the case with any other witness.  I don't know who the witnesses are.

To the extent they are family members, you know, I don't see the Court getting involved in policing relationships with family members in this context.  Just submit something in writing.  I have more on my criminal docket, and I didn't know you all would be raising this with me today, okay?  So you can file something.  I'll take a look at it then.

In terms of Mr. Macaulay, have you had an opportunity to review the Pretrial Services report?

MR. BARBARI:  Yes, Your Honor, we have, and there's no objections to the conditions.  There is one caveat, as it relates to the surrender of the passport, that I wanted to bring up to the Court, and I discussed this with the government.

Mr. Macaulay is employed by Carnival Cruises and does travel internationally quite a bit.  So there's no objection to

surrendering the passport to Pretrial Services, but we would ask for a carve-out that, upon approved travel through his work, that Pretrial Services can allow him to get his passport, pick it up, do the travel, perform his work, and return it upon return.

I don't believe there's an objection to that by the government.  They can correct me if I'm wrong.  And we would like to be able to put that in the condition so that we don't have to file a motion every time there's going to be work travel, Your Honor.

MR. HOOD:  That's correct, Your Honor.  We have no issue with that.

THE COURT:  And so I -- that sounds reasonable to me.  And so I will enter that order.  I'm going to include the conditions that are recommended, that have been recommended by Pretrial Services.  And with respect -- with respect to the passport surrendering, I'll include that carve-out.

MR. SCHAMEL:  Thank you, Your Honor.  And, Your Honor, I have one question procedurally as to the trial.  Does Your Honor sit on Fridays?

THE COURT:  For trial, it depends.  It depends.  So I can't tell you right now, because if I need to take up my -- one of my dockets, I'll likely do that on the Friday, but I won't know until --

MR. BARBARI:  Understood.

THE COURT:  -- closer to that date.

MR. BARBARI:  Thank you.

THE COURT:  I'll let you know at that time, probably at the motions hearing.

MR. BARBARI:  Thank you, Your Honor.  Courts indulgence. And I just want to confirm something with pretrial.

(Brief pause in proceedings.)

MR. BARBARI:  Your Honor, he wanted to be able to travel to D.C. to be with counsel.  It says District of Maryland and EDVA, and I want him to be able to travel to D.C. to speak with his counsel.

THE COURT:  Yes.  I'll add District of Columbia there.

MR. BARBARI:  Thank you, Your Honor.

THE COURT:  And so you all are excused at this time.  You and your client will need to wait in order to sign the paperwork.

MR. BARBARI:  Yes, Your Honor.

THE COURT:  But my next two matters are under seal, so you'll need to wait in the hallway.

MR. BARBARI:  Understood.  Thank you, Your Honor.

(Proceedings adjourned at 9:26 a.m.)

**C E R T I F I C A T E**


                I, Scott L. Wallace, RDR-CRR,
certify that the foregoing is a correct transcript
from the record of proceedings in the above-entitled
matter.


 /s/ Scott L. Wallace                        1/7/25

 ------------------------------       ----------------
  **Scott L. Wallace, RDR, CRR**                **Date**
    **Official Court Reporter**