```
                        UNITED STATES DISTRICT COURT
                  FOR THE EASTERN DISTRICT OF VIRGINIA
```

**UNITED STATES OF AMERICA**        :
                                    :
                    **Plaintiff,**  :   Criminal Action
                                    :   No. 24-180-PTG
        **v.**                      :
                                    :   Court of Appeals
**RAYMOND RAHBAR, JR.(1)**          :   No. 25-4546
                                    :
                                    :
                                    :   April 10, 2025
        **Defendant.**              :   2:15 p.m.
                                    :
............................ :


                **TRANSCRIPT CHANGE OF PLEA PROCEEDINGS**
        **BEFORE THE HONORABLE PATRICIA TOLLIVER GILES,**
            **UNITED STATES DISTRICT COURT JUDGE**

APPEARANCES:

For the United States:        **Christopher J. Hood, Assistant U.S.**
                              **Attorney**
                              UNITED STATES ATTORNEY'S OFFICE
                              EASTERN DISTRICT OF VIRGINIA
                              2100 Jamieson Avenue
                              Alexandria, VA 22314
                              703-299-3700
                              Email: Christopher.hood2@usdoj.gov

                              **Kristin S. Starr, Assistant U.S.**
                              **Attorney**
                              UNITED STATES ATTORNEY'S OFFICE
                              EASTERN DISTRICT OF VIRGINIA
                              2100 Jamieson Avenue
                              Alexandria, VA 22314
                              703-299-3700
                              Email: Kristin.Starr@usdoj.gov

APPEARANCES:  (Cont.)

For the Government:                    **Avishek Panth, Assistant U.S.**
                                      **Attorney**
                                      UNITED STATES ATTORNEY'S OFFICE
                                      EASTERN DISTRICT OF VIRGINIA 2100
                                      Jamieson Avenue
                                      Alexandria, VA 22314
                                      703-299-3700
                                      Fax: 703-299-3982
                                      Email: Avishek.panth@usdoj.gov

For Defendant Rahbar:                 **Joseph Thomas Flood, Esq.**
                                      THE LAW OFFICE OF JOSEPH T. FLOOD
                                      10621 Jones Street
                                      Suite 301-A
                                      Fairfax, VA 22030
                                      703-691-8410
                                      Fax: 703-251-0757
                                      Email: Jflood@sfhdefense.com

                                      **Alyse Wren Ullery, Esq.**
                                      GIBSON, DUNN & CRUTCHER LLP
                                      (DC-NA)
                                      1700 M. Street, NW
                                      Washington, DC 20036
                                      202-955-8500
                                      Fax: 202-831-6126
                                      Email: Aullery-glod@gibsondunn.com

Court Reporter:                       **Scott L. Wallace, RDR, RMR, CRR**
                                      Official Court Reporter
                                      United States District Court
                                      401 Courthouse Square
                                      Alexandria, VA 22314-5798
                                      Cell: 443-584-6558
                                      Email: Scottwallace.edva@gmail.com

Proceedings reported by machine shorthand, transcript produced
by computer-aided transcription.

**AFTERNOON SESSION, APRIL 10, 2025**

(12:16 p.m.)

THE COURTROOM CLERK:  The *United States versus Raymond Rahbar*, Case Number 1:24-cr-180.

Would counsel note their answers for the record?

MR. HOOD:  Good afternoon, Your Honor.  Chris Hood, Kristin Starr, and Avi Panth on behalf of the United.

THE COURT:  Good afternoon to all of you.

MR. FLOOD:  Good afternoon, Your Honor.  Joseph Flood and Alyse Ullery on behalf of Mr. Rahbar.

THE COURT:  Good afternoon to you, and good afternoon, Mr. Rahbar.  So we're on today, I understand, for a change of plea hearing, and Mr. Rahbar would like to plead guilty to Counts 1 and 12 of the superseding indictment; is that correct?

MR. FLOOD:  That's correct, Your Honor.

THE COURT:  Okay.  I have the original papers up here. Are they the same as the courtesy copies?

MR. HOOD:  There was one change, Your Honor, on the plea agreement on the first page, specifically the first paragraph. It mentioned the indictment, and I changed that to say "superseding indictment."

THE COURT:  Okay.  Thank you.  And since this is a case involving victims, I think the SBA is the victim in this case, but were there notifications that went out?

MR. HOOD:  Yes, Your Honor.  There are -- SBA is the

victim, but also, for Count 12, an individual identified as H.B. as a victim, and she was notified.

THE COURT:  Okay.  Thank you.  Okay, Mr. Rahbar, I'm going to have you come to the podium with your attorney.

THE DEFENDANT:  Yes, Your Honor.

(RAYMOND RAHBAR, DEFENDANT IN THE CASE, SWORN.)

THE COURT:  Okay.  I'm now going to ask you some questions to make sure that your plea is valid under the United States Constitution and under federal law.

If at any time you don't understand one of my questions, please let me know.  And if you need an opportunity to consult with your attorneys, please let me know that as well, okay?

THE DEFENDANT:  Yes, Your Honor.  Thank you.

THE COURT:  Now, do you understand that you are now under oath, and that requires you to answer my questions truthfully?

If you were to answer one of my questions untruthfully, then those statements could be used against you in another prosecution for perjury or for making false statements. Understood?

THE DEFENDANT:  I understand, Your Honor.

THE COURT:  Please state your full name.

THE DEFENDANT:  Raymond Rahbar.

THE COURT:  And how old are you?

THE DEFENDANT:  I am 43 years old, Your Honor.

THE COURT:  How far did you go in school?

THE DEFENDANT:  Um, the last degree I had was an L.L.M. in taxation.

THE COURT:  Okay.  And so it's safe to say that you can read and write the English language without difficulty?

THE DEFENDANT:  That is correct, Your Honor.

THE COURT:  Have you ever been treated for mental illness or addiction to narcotic drugs of any kind?

THE DEFENDANT:  I have not, Your Honor.

THE COURT:  And are you currently under the influence of any drug, alcohol, or medication?

THE DEFENDANT:  I am not, Your Honor.

THE COURT:  Mr. Flood, do you consider your client competent to enter a plea of guilty?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  And Mr. Rahbar, have you had an adequate time and opportunity to discuss your case with your attorneys?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And by discuss your case, I mean go over the charges, the evidence, and any potential defenses?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And are you fully satisfied with your attorneys representation of you?

THE DEFENDANT:  I am, Your Honor.

THE COURT:  And did you have an opportunity to read and discuss the plea agreement with your attorney prior to you

signing it?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And does this agreement represent in its entirety your understanding with the United States?

THE DEFENDANT:  I believe there's also a Statement of Facts, Your Honor.

THE COURT:  There is.  I'll get to that separately.  I'm asking you about the plea agreement, but I see you're paying attention and tracking.

THE DEFENDANT:  Yes.

THE COURT:  Does the plea agreement represent in its entirety your agreement and understanding with the United States?

THE DEFENDANT:  Yes, it does, Your Honor.

THE COURT:  Has anyone made any promises or assurances to you that aren't in the plea agreement to get you to plead guilty today?

THE DEFENDANT:  No, Your Honor.

THE COURT:  And has anyone made any threats to get you to accept the plea agreement?

THE DEFENDANT:  Nobody has, Your Honor.

THE COURT:  Okay.  Now, by pleading guilty, you're giving up certain rights that are guaranteed under the Constitution, and I'm going to review those with you.

Now, do you understand that you have the absolute right to plead not guilty and to persist in that plea?

THE DEFENDANT:  Yes, I do, Your Honor.

THE COURT:  You also have the right to trial by jury, and at that trial, you would be presumed innocent because all defendants are presumed innocent, okay?  Then, at trial, the United States would have to prove your guilt beyond a reasonable doubt.  Do you understand all of that?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  Now, at trial and at every stage of the proceedings, you would also have the right to be represented by an attorney.  You would also have the right to see and confront the witnesses against you.

And if you so compelled or so desired, you could compel witnesses to come in and testify on your own behalf, but you could not be compelled to testify.  And if you decided not to call any witnesses or not to testify, that could not be held against you.  Do you understand?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  Now, do you understand, by pleading guilty, you are giving up these rights?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  And that if I accept your guilty plea, there's not going to be a trial of any kind.  Do you understand?

THE DEFENDANT:  I do understand that, Your Honor.

THE COURT:  Now, do you understand that once you have entered a guilty plea and I have accepted it, you would have no

right to withdraw your guilty plea?

THE DEFENDANT:  I do understand that.

THE COURT:  Has anyone threatened you or anyone else or in any way forced you to plead guilty?

THE DEFENDANT:  Nobody has, Your Honor.

THE COURT:  And has any officer or agent of the government promised or suggested that you will receive a lighter sentence or some other form of leniency by pleading guilty?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Are you pleading guilty of your own free will because you are, in fact, guilty?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  Now I'm going to go over the two counts in the indictment that you are agreeing to plead guilty to, okay, of the superseding, and I'm looking to Count 1 and Count 12.

And Count 1 provides that -- and I'm skipping over -- it alleges a number of things, and this is the same superseding indictment that you were arraigned on, okay?  And you indicated at that time that this -- that you had read this superseding indictment, correct?

THE DEFENDANT:  Correct, Your Honor.

THE COURT:  Okay.  So I'm skipping forward, then, to the operative language in Count 1, okay?  And it alleges -- and I'm starting at paragraph 24 -- it alleges that, beginning no later than about April 2020 and continuing through at least about June

of 2021, in the Eastern District of Virginia and elsewhere, that defendants -- essentially you, Raymond Rahbar, Jr., and others, known and unknown to the Grand Jury, did knowingly and willfully conspire, confederate, and agree with others to knowingly devise and intend to devise a scheme, an artifice to defraud a financial institution, and to obtain any moneys, funds, credits, and assets owned by and under the custody and control of a financial institution by means of materially false and fraudulent pretenses, representations, and promises in violation of Title 18, United States Code Section 1344, okay?

Count 1 goes on to allege that the object of the conspiracy was for the defendants to enrich themselves by fraudulently obtaining PPP loans to which you were not entitled.

And then paragraphs 26 through 60 essentially set out the manner and means of the conspiracy.  Do you see that?

MR. FLOOD:  We're looking at the Statement of Facts, Your Honor.  We don't have the indictment.

THE COURT:  Oh.  You don't have the indictment?  Uh, oh. I don't have a copy of it.

MR. FLOOD:  It's something that we spent a considerable amount of time with, Your Honor.

THE COURT:  All right.  I always read the charge to people.  Do you understand the portion of the charge that I read because that's the -- that's the relative or relevant portion of Count 1, the charging portion of it that charges you with

agreeing with others to knowingly devise and intend to devise a scheme or artifice to defraud, okay?

THE DEFENDANT:  I do, Your Honor.  It's similar to the Statement of Facts Number 8, slightly different wording, but the same --

THE COURT:  But did you listen to the charging language that I read to you?

THE DEFENDANT:  I did, Your Honor.

THE COURT:  Okay.  And then did you understand what you have been charged with and are pleading guilty to?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  Okay.  All right.  Now I'm going to read Count 12 to you, and I'll just read it.

On or about the dates listed below, in the Eastern District of Virginia and elsewhere, the defendant, Raymond Rahbar, Jr., did knowingly transfer, possess, or use without lawful authority the means of identification, as described below, during and in relation to the crime of conspiracy to commit bank fraud as alleged in Count 1 above.

And specifically, it was on April 14th of 2020 that you, Raymond Rahbar, Jr., used identity theft, Victim H.B.'s means of identification, including her physical address, e-mail address, and phone number, while applying for a PPP loan on behalf of BF Chinatown?  Do you understand that?

THE DEFENDANT:  I do, Your Honor.

THE COURT: Okay. Now, this -- the superseding indictment also contains a forfeiture notice, and the forfeiture notice advises you that, upon your conviction of Count 1 of the superseding indictment, that you shall forfeit to the United States any interest in any property constituting or derived from proceeds that you obtained directly or indirectly as a result of the offense. Do you understand that, you know, that you will have to forfeit --

THE DEFENDANT: I do, Your Honor.

THE COURT: -- certain property here?

THE DEFENDANT: I do, Your Honor.

THE COURT: Okay. Now, the -- have you discussed with your attorney what the government would have to prove if this case went to trial?

THE DEFENDANT: I have, Your Honor.

THE COURT: Okay. I'm still going to go over that with you, too. And for Count 1, the government would have to prove beyond a reasonable doubt that you knowingly participated in an agreement to commit this -- which is this -- commit this bank fraud, and you did it with the intent to pursue the criminal objective, okay, which was the bank fraud here. Do you understand that?

THE DEFENDANT: I do, Your Honor.

THE COURT: Now, as to Count 12, which is the aggravated identity theft count, the government would have to prove beyond a

reasonable doubt that you knowingly transferred, possessed, or used, without lawful authority, a means of identification of another person during and in relation to a predicate felony offense, which is the bank fraud.  Do you understand that?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  Okay.  So, then, do you understand what you are pleading guilty to?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  Now I'm going to go over the plea agreement with you, okay?  I am holding up page 13 of the plea agreement.

Is that your signature on page 13?

THE DEFENDANT:  It is, Your Honor.

THE COURT:  Okay.  And, again, did you read this agreement and discuss it with your attorney before you signed it?

THE DEFENDANT:  I did, Your Honor.

THE COURT:  Okay.  Now I'm going to go over certain terms of this plea agreement with you in open court today, but whether I go over a certain provision with you or not, you are still bound by this entire plea agreement.  Do you understand that?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  Now, we're going to start with Section 1 of the plea agreement, okay?

Now, Section 1 provides that you are agreeing to plead guilty to Counts 1 and 12 of the superseding indictment.  And Count 1 charges you with conspiracy to commit bank fraud, and it

advises you in this paragraph that the maximum penalties for this offense are a maximum term of 30 years imprisonment, a fine of the greater of $1 million or twice the gross gain or loss, full restitution, forfeiture of assets, a special assessment, and a maximum supervised release term of five years.  Do you understand that those are the maximum penalties for Count 1?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  Okay.  Now with respect to Count 12, which is the aggravated identity theft count, the maximum penalties for this offense are a mandatory term of imprisonment of two years, which would be consecutive to any other term of imprisonment.  Do you understand that?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  Okay.  A fine of $250,000, a special assessment, and a maximum supervised release term of one year.  Now, do you understand that these are the maximum penalties with respect to Count 12?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  Okay.  Now, this paragraph also provides that you understand that supervised release is in addition to any prison term that you may receive, okay?

THE DEFENDANT:  I do understand that.

THE COURT:  And if you were to violate a condition of supervised release, it could result in you being returned to prison for the full term of your supervised release.  Do you

understand that?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  Okay.  Now, paragraph 4 of the -- or Section 4 of the plea agreement covers sentencing recommendations, guidelines, recommendations and roles.

And on page 3, the parties are agreeing that they're going to recommend to the Court that a certain guideline provision applies.  And the one that you all reference here in this agreement is the Section 3B1.1, which is the aggravating role, and the parties are recommending that at least a two-level enhancement should be applied in this case.  Do you understand that, that that's what the parties have agreed to?

THE DEFENDANT:  I do understand that, Your Honor.

THE COURT:  Now, this is only a recommendation from the parties.  The Court is not bound by any recommendation of the parties.  Do you understand that?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  Okay.  Now, it also provides here in this section that you and the United States have not agreed on any further sentencing issues, correct?

THE DEFENDANT:  Correct, Your Honor.

THE COURT:  Now, have you and your attorney discussed the sentencing guidelines and how they might apply to your case?

THE DEFENDANT:  We have, Your Honor.

THE COURT:  Okay.  Now, do you understand that the

sentence imposed may be different from any estimate that you receive from your attorney?

THE DEFENDANT:  I have, Your Honor.

THE COURT:  Okay.  You understand?

THE DEFENDANT:  I have spoken to him about that, Your Honor.

THE COURT:  You understand that?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  Okay.  And do you understand that I'm not going to sentence you today?

THE DEFENDANT:  I do understand that.

THE COURT:  And, in fact, I won't even know what the advisory guideline range is until after the U.S. Probation Office prepares a presentence report.  And after they prepare that presentence report, then you and your attorneys, the government, you'll all have the opportunity to look at that report and make any corrections or objections to the report, the information therein, as well as the calculations that are there.  Do you understand that?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  Okay.  Now, do you understand that, even after the initial advisory guideline range has been calculated, in certain circumstances the Court can either depart upward or downward from that advisory guideline range?

THE DEFENDANT:  Am I allowed to ask my counsel one thing?

THE COURT:  Sure.  Go ahead.

(Thereupon, a discussion was had off the record between the defendant and his attorney.)

THE DEFENDANT:  Um, I apologize.  I forgot the basis of your question, but I do, Your Honor.

THE COURT:  I just asked, do you understand that, in certain circumstances, the Court can either depart upward or downward from the initial guideline range?

THE DEFENDANT:  I do understand, Your Honor.

THE COURT:  Okay.  Now, do you also understand that I will also consider the statutory sentencing factors found in 3553(a), and sometimes that can result in a sentence that is either greater or lesser than the advisory guideline range?

THE DEFENDANT:  Yes, Your Honor, I understand.

THE COURT:  And, again, do you understand that if the sentence imposed is more severe than what you expect, you will still be bound by your plea and you will have no right to withdraw it?

THE DEFENDANT:  I do understand, Your Honor.

THE COURT:  Now, in Section 5 of the plea agreement, it covers a number of things, but what I want to cover with you is the waiver of appeal, because in this section you are knowingly waiving your right to appeal the conviction and any sentence within the statutory maximum on any ground whatsoever, except for a claim of ineffective assistance of counsel that you could raise

on direct appeal.  Do you understand that?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  Now, in Section 6 of the plea agreement, the government has agreed that it will not further criminally prosecute you in the Eastern District of Virginia for the specific conduct described in the indictment or Statement of Facts.

Now, there's an exception here because this -- the plea agreement and the Statement of Facts does not confer any immunity from prosecution by any state government?  Do you understand that?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  Okay.  And paragraph 7 of the plea agreement, the United States has agreed that upon execution of this agreement and acceptance of your guilty plea, the Court's acceptance of your guilty plea, that at sentencing they're going to move to dismiss the remaining counts against you in the superseding indictment.  Do you understand that?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  Okay.  In Section 9 of the plea agreement, you agree to pay the mandatory special assessment of $100 per each felony count.  Do you understand?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  Section 10 of the plea agreement covers restitution.  And in this paragraph you have acknowledged that

restitution is mandatory in this case, and you agree to the entry of a restitution order in the full amount of the victims' losses. Do you understand that?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  And, in that next sentence, it provides that you also agree that an offense listed in Section 3663A(c)(1) gave rise to this plea agreement, and, because of that, victims of the conduct that's described in the charging instrument, which is here the superseding indictment, the Statement of Facts, or any related or similar conduct shall be entitled to restitution.  Do you understand?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  Okay.  And here, in this plea agreement, the parties have identified that, at a minimum, the victim listed here, the Small Business Administration, is entitled to restitution.

Now, this doesn't limit the amount of restitution that the court can impose, but it at least acknowledges that at least this one victim is entitled to restitution in some amount to be determined.  Do you understand?

THE DEFENDANT:  I do understand, Your Honor.

THE COURT:  Now, on the following page, you have agreed that, you know -- you acknowledge that the determination of loss for all victims can be complicated and time-consuming.  So you have agreed to defer the imposition of restitution until after

sentencing.  And you specifically waive the 90-day provision that is found in Section 3664(d)(5), and you consent to entry of any orders pertaining to restitution after sentencing without limitation.  Do you understand?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  And Section 11 of the plea agreement, you've agreed to forfeit all interest in any fraud-related asset that you own or over which you exercise any control.  And this includes -- this property subject to foreclosure includes property that constitutes proceeds of the offense.  Do you understand that?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  Okay.  Now, I need to cover some things with you that aren't specifically mentioned in the plea agreement, okay?

And that is, by pleading guilty, it can have consequences and cause you to lose some valuable Civil Rights, and I need to review those with you, okay?

And that is your right to vote, your right to hold public office, your right to serve on a jury, and your right to possess firearms or ammunition of any kind.

These are all valuable Civil Rights that you could possibly lose as a consequence of a conviction for these offenses, okay?  Do you understand that?

THE DEFENDANT:  I do, Your Honor.

THE COURT:  And knowing that, do you still want to plead guilty?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Now, do you understand that, if you violate any provision of this plea agreement, the United States would be released from its obligations under the agreement, but you could not withdraw your guilty plea?

THE DEFENDANT:  I understand, Your Honor.

THE COURT:  And do you understand that, if I accept your plea of guilty, the only issue remaining will be what sentence is to be imposed, and that decision will be made by me at a later time.  Do you understand that?

THE DEFENDANT:  Yes, I do, Your Honor.

THE COURT:  Is there some question about that?

MR. FLOOD:  He has certain obligations under this plea agreement that require him to do certain things.  I see that as a matter of the timing of sentencing.  He was required to do them before he's sentenced, and that's what he was just referring to.

THE COURT:  The only issue -- oh.  I understand what you're saying.  But what is -- the purpose of this question is for you to understand that, after I accept your plea of guilty, your guilt will be established.  There's not going to be a trial of any kind.  Do you understand that?

THE DEFENDANT:  That I do understand, Your Honor.

THE COURT:  Okay.  Now, do you understand that the plea

agreement and the Statement of Facts, which I'm about to review with you in a moment, that these constitute the complete agreement between you and the United States?  That's what you were getting at earlier?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  In other words, there are no side deals; this is it?

THE DEFENDANT:  That is correct, Your Honor.

THE COURT:  Okay.

Now, I'm going to review the Statement of Facts with you. Now, I'm holding up the last page of this Statement of Facts.  Is this your signature?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Now, again, did you read this Statement of Facts carefully and go over it with your attorneys before you signed it?

THE DEFENDANT:  I did, Your Honor.

THE COURT:  Now, is this accurate?

THE DEFENDANT:  It is, Your Honor.

THE COURT:  Is it an accurate statement of what you did in this case?

THE DEFENDANT:  It is, Your Honor.

THE COURT:  Is there anything in this Statement of Facts that you contend is false?

THE DEFENDANT:  I'm sorry?

THE COURT:  Is there anything in this Statement of Facts that you contend is false?

THE DEFENDANT:  I do not, Your Honor.

THE COURT:  Now I'm going to have you take a seat, and I'm going to have the government come forward and provide the factual basis for the plea on the record.  And I want you to listen carefully, Mr. Rahbar, because, after Mr. Hood finishes, I'm going to have you return to the podium, and I'm going to ask you the same two questions:  Is that recitation of the facts accurate, and if there's anything that you contend is false, okay?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Okay.  And Mr. Hood, you don't need to read this word-for-word, but please provide the factual basis.

MR. HOOD:  Absolutely, Your Honor.  Had this case proceeded to trial, the United States would have proven the following beyond a reasonable doubt with admissible and credible evidence:  At all relevant times, Mr. Rahbar was a cofounder of a fitness center called Beyond Fit.  Beyond Fit uses a series of entities in order to facilitate the -- excuse me.  Several entities existed to facilitate the operation of Beyond Fit, and Mr. Rahbar co-founded Beyond Fit, which was a fitness start-up with Ryan Macaulay and Carl Pierre.

The Small Business Administration was an agency within the government that administered, among other things, the Paycheck

Protection Program or the PPP.  The PPP was a program that provided low interest financing to small businesses and came to be during the COVID-19 pandemic.

To obtain a PPP loan, a business was required to submit an application to a private lender and certify that all the information in that application was true and correct to the best of the applicant's knowledge.

After the PPP application was submitted and approved, the SBA would reimburse the lender, who would then lend the money to the applicant.  There are four banks identified in the superseding indictment, including Bank 1, Bank 2, Bank 3, and Bank 4, were all financial institutions for purposes of 18 U.S.C. Section 20 and also participated in the PPP program.

The amount of the loan, if approved, was based on the applicant's stated number of employees, salary, expenses, and revenue.

Between the dates of April 2020 and June 2021, the defendant knowingly and willfully conspired to obtain money under the credit -- excuse me, money under the custody and control of the financial institution by means of materially false and fraudulent pretenses:  Specifically, Rahbar, along with his co-conspirators, Macaulay and Pierre, applied for PPP loans with various financial institutions, including Banks 1 through 4.

In those applications, Rahbar and his co-conspirators increased their payroll costs in order to obtain more money from

the PPP lenders.  In support of their applications, they submitted payroll summaries that included folks that were not actually employees of Beyond Fit, and they also included fabricated tax forms that reflected their inflated employee count, instead of their true number of employees.

Rahbar organized and led the effort to fraudulently obtain PPP loans.  In reality, Beyond Fit never opened to the public and never employed the number of people claimed.

For example, on a first draw PPP application for an entity called BF Chinatown, Rahbar claimed that BF Chinatown employed 54 people and had $265,000 worth of average monthly payroll.

The accompanying payroll summary included people who never worked as employees for Beyond Fit and included their personal identifying information.  Many of these people met with representatives from Beyond Fit at a career fair hosted at Georgetown University.

A person identified here as H.B. attended this career fair in early 2020, met a representative from Beyond Fit, did not authorize her information to be used on a Payroll Protection Program loan, but that information was included on the payroll summary, and that information included H.B.'s name, physical address, e-mail address, and phone number.

H.B. never worked at Beyond Fit, did not authorize Beyond Fit to use her means of identification, and never received any money from the PPP.

In support of that application, Rahbar also submitted a Form 941 for Q 1-2020 that claimed that BF Chinatown employed 54 people.  That document was never filed with the IRS.

Records from the Virginia Employment Commission confirmed that the representations on that PPP application were false.

Rahbar knew that the applications that he and his co-conspirators submitted inflated the number of employees who worked at Beyond Fit.

As a result of their conduct, the Beyond Fit entities received five fraudulent PPP loans.  Additionally, using the same type of misrepresentations, Rahbar also obtained four PPP loans on behalf of AMC Building Group and American Majestic Construction, both of which are companies that he controlled.

In total, Rahbar fraudulently obtained at least $3.1 million in PPP loans, including over 1.5 million from Bank 1.

This Statement of Facts includes all of those necessary to support the plea but does not include all of the facts known to the parties.  At all relevant times, Rahbar's actions were knowing and deliberate, and were not committed by mistake, accident, or other innocent reason.

THE COURT:  Okay, Mr. Rahbar.  Did you listen to that recitation of facts here?

THE DEFENDANT:  I did, Your Honor.

THE COURT:  And was it accurate?

THE DEFENDANT:  It was, Your Honor.

THE COURT:  Is there anything that you contend is false?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Then are you offering to plead guilty because you are, in fact, guilty?

THE DEFENDANT:  That is correct, Your Honor.

THE COURT:  Mr. Flood, on behalf of your client, do you agree that the Statement of Facts is accurate and satisfies --

MR. FLOOD:  -- yes, Your Honor --

THE COURT:  -- and satisfies each of the essential elements of the offenses?

MR. FLOOD:  I believe so.

THE COURT:  And so, Mr. Rahbar, how, then, do you plead to Counts 1 and 12 of the superseding indictment?

THE DEFENDANT:  I plead guilty, Your Honor.

THE COURT:  It is the finding of the case -- of the Court, in the case of the United States versus Raymond Rahbar, Jr., that the defendant is fully competent and capable of entering an informed plea, and that his plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense.

The defendant's plea is therefore accepted, and he is now adjudged guilty of those offenses, Counts 1 and 12.  Okay.

And so you can have a seat, Mr. Rahbar.

And so now I'm going to set a date for sentencing, okay?

MR. FLOOD:  May I be heard?

THE COURT:  No, not yet, because I have something to explain to him.  Between now and then, you and your attorneys are going to meet with someone from the U.S. Probation Office, okay?  And they're going to collect a lot of information from you, information about your background, about your upbringing, your family, your health, your mental health, your physical health, your finances.  They're going to meet with the government.  They're going to get information about the underlying offense and review some of the discovery in the case, and they're going to use all of that information to prepare that presentence report that we discussed earlier, okay?

And then you and your attorney can review it, and the government's going to review it and make any corrections and objections, okay?  But that's the process.

Now, Mr. Flood, did you want to be heard with respect to the sentencing?

MR. FLOOD:  Yes, Your Honor.  I just want to call the Court's attention to paragraph 14 of the plea agreement that requires Mr. Rahbar to file taxes, pay penalties and the like within 180 days of the entry of this plea, which starts today.

This is going to be something of a complicated process.  As the Court is aware, there's voluminous information with multiple different entities, so we're going to be asking for an unusually long time for sentencing so that he can complete those

tasks before he's sentenced.

THE COURT:  Let me hear from the government on that, because I've done a lot of these types of fraud cases, and I've never pushed a sentencing back for that reason.

MR. HOOD:  Your Honor, very briefly.  We have no objection to the request.

THE COURT:  Why?

MR. HOOD:  Well, certainly we understand that the plea agreement has certain obligations for Mr. Rahbar.  I have no reason to doubt the representations from him and his lawyer that it will take some amount of time to complete that.

I -- we take no position on whether or not it is possible to complete it in the normal 90 days that I think this Court tends to prefer when setting sentencing.  We just don't have -- we're just not in a position to understand how complicated these taxes are.

Certainly, we can and do acknowledge that there are lots of potential issues in the various taxes that were filed for both Mr. Rahbar and for these Beyond Fit entities, but beyond that, we have no additional insight.

THE COURT:  Okay.  The 11th of September?

MR. FLOOD:  Excuse me?

THE COURT:  The 11th of September.

MR. FLOOD:  Thank you, Your Honor.

THE COURT:  All right.  And that will be at 9 a.m. on my

normal criminal docket.

Now, Mr. Rahbar is already on conditions of release.  Is there any reason to revisit those?

MR. FLOOD:  Not from the defense.  We'd ask that they be continued as is.

MR. HOOD:  No objection from the government.

THE COURT:  Okay.  And so you'll be continued under those same conditions, Mr. Rahbar, okay?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  And I'll see you back here on September 11th, okay?  And if there's some other issue, you all will raise it with me, I'm sure, in terms of that date.  But otherwise, I think I've set it out sufficiently enough, okay?

MR. FLOOD:  Thank you.

THE COURT:  All right.  Anything else?

MR. HOOD:  Not from the government, Your Honor.

THE COURT:  Mr. Flood?

MR. FLOOD:  Not from the defense.  Thank you.

THE COURT:  Okay.  Then we're adjourned.

(Proceedings adjourned at 12:53 p.m.)

**C E R T I F I C A T E**

I, Scott L. Wallace, RDR-CRR, certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.

/s/ Scott L. Wallace                              1/6/25

-------------------------------          ----------------
**Scott L. Wallace, RDR, CRR**                    **Date**
   **Official Court Reporter**